THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID ALLEN GREER, Defendant-Appellant.

Third District    No. 3—95—0195

Opinion filed October 23, 1997.—Rehearing denied January 29, 1998.

862

McCUSKEY, J., dissenting.

Kenneth D. Brown, of State Appellate Defender's Office, of Ottawa, and John Wood, of Peoria, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and Domenica Osterberger, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

The defendant, David Allen Greer, was convicted of first degree murder (720 ILCS 5/9—1(a)(2) (West 1994)) and sentenced to 50 years in prison. On appeal, the defendant contends that several reversible errors occurred during his trial, including the restriction of his cross-examination of a witness. We hold that curtailing the defendant's cross-examination of one of the State's key witnesses constituted reversible error. Thus, we reverse and remand.

In the interest of brevity, we will outline only those facts necessary to our discussion of the issue. On July 13, 1993, the victim was shot and killed near a public housing project in Rock Island, Illinois. At trial, one witness, Steve Fuhlman, testified that he saw the defendant shooting a gun toward the location where the victim's body was later found. Fuhlman did not see the victim, however.

On cross-examination of Fuhlman, the defendant brought out that the State had helped Fuhlman move from the neighborhood where the shooting occurred by furnishing Fuhlman with a moving van and paying for his stay in a hotel during the move. The defendant also attempted to bring out several other facts to show that Fuhlman was biased toward the State. Those facts included: (1) that Fuhlman had wanted to move from his home near the public housing project for some time; (2) that he was unable to do so for financial reasons; and (3) that he had not paid real estate taxes for two years. Upon the State's objection, the trial court refused to allow the defendant to pursue this line of questioning. In doing so, the trial judge stated, before the jury, that "this is ridiculous. Cut it out." When the defendant pointed out to the judge that he had used the word "ridiculous" in front of the jury, the judge told the jury that he did not mean by that remark that the defendant, his attorney or his theory of defense was ridiculous.

After the conclusion of the trial and before jury deliberations began, three jurors were allowed to go outside the courthouse to smoke cigarettes. While they were smoking, the jurors saw the defendant, in shackles, being led from the courthouse to a nearby vehicle for transportation back to the county jail.

The defendant was convicted and sentenced as previously noted.

On appeal, the defendant contends that his cross-examination of Fuhlman was unfairly restricted and that this restriction prevented him from fully developing his theory of defense.

■ The defendant has the right to cross-examine a witness for the purpose of showing the witness' interest, bias or motive to testify falsely. *People v. Britt*, 265 Ill. App. 3d 129, 638 N.E.2d 282 (1994). Such cross-examination may concern any matter that goes to explain, modify, discredit or destroy the witness' testimony on direct examination. See *People v. Aughinbaugh*, 36 Ill. 2d 320, 223 N.E.2d 117 (1967). The trial court should give the defendant the widest latitude to allow him to establish a witness' bias or motive. *People v. Gonzalez*, 104 Ill. 2d 332, 472 N.E.2d 417 (1984). According to the Illinois Supreme Court, when the defense theory is that the defendant has been framed and the witness who led the police to the defendant has a motive to testify falsely, the evidence to show that motive is "hardly collateral." *Gonzalez*, 104 Ill. 2d at 338, 472 N.E.2d at 420. Moreover, the United States Supreme Court has said that the jury is entitled to have the details of the theory of defense before it so it can make an informed judgment about the weight to give the testimony it has heard. *Davis v. Alaska*, 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974).

■ In the case at bar, the defendant attempted to cross-examine Fuhlman on the depth of his financial distress and the extent of his desire to move from the neighborhood in which the crime occurred. Given these factors, the defendant then hoped to argue that the help Fuhlman received from the State was sufficient to induce him to implicate the defendant in the victim's death. The trial court, however, stopped the defendant from adequately developing this theory of impeachment. According to the trial court, these issues were collateral. We disagree. As in the *Gonzalez* case, the evidence that Fuhlman was behind in his real estate taxes and that he had wanted to leave the neighborhood for many years but had been financially unable to do so was "hardly collateral" to the question of whether Fuhlman would testify falsely in order to obtain help in moving.

Moreover, instead of giving the defendant the "widest latitude," the trial court interrupted his attorney's cross-examination and labelled it "ridiculous" in front of the jury. To compound matters, the judge later told the jury that his remarks did not mean that the defendant, his attorney or his case was ridiculous. Was there any other way to interpret that statement? We think not.

Based on our review of the record on appeal, we hold that restricting the defendant's cross-examination was reversible error.

Finally, we note that the Illinois Supreme Court has frowned upon allowing jurors to see a defendant wearing shackles. See *People v. Boose*, 66 Ill. 2d 261, 362 N.E.2d 303 (1977). While it appears that the incident in this case was inadvertent, we stress to the trial court that a recurrence of that event must be assiduously avoided.

Our decision to remand the case for a new trial obviates the need to consider the other errors the defendant claims occurred at the first trial.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is reversed and the matter remanded for further proceedings consistent with this opinion.

Reversed and remanded.

MICHELA, J., concurs.

JUSTICE McCUSKEY, dissenting:
I disagree with both the majority's reasoning and conclusion. Therefore, after a careful review of the record, I respectfully dissent.

The resolution of this case requires more facts than those provided by the majority. On July 13, 1993, the victim was shot and killed near the Arsenal Courts housing project in Rock Island, Il-

linois. There were *two* eyewitnesses to the shooting. At trial, Gary Davis identified the defendant as the murderer. He testified that he saw the defendant shoot the victim.

A second witness, Steve Fuhlman, was interviewed by Officer Mark Nenninger on the day of the murder pursuant to a "neighborhood canvas" in search of witnesses to the murder. Fuhlman told the officers that he was outside on the street working on his car when he saw one black man chasing another black man. On July 15, 1993, Fuhlman picked the defendant out of a photographic lineup.

At trial, Fuhlman identified the defendant as the shooter. On cross-examination, defense counsel engaged in the following exchange:

"Q. [D]id the State provide assistance to you or to [*sic*] the State's Attorney's Office provide assistance to you in moving away from the Arsenal Courts area?

A. Some.

Q. So they provided some money for you for moving?

A. No. They supplied a truck.

Q. So you didn't have to rent a truck to move. Is that correct?

A. Well I'm not totally moved. I still have belongings in the house.

Q. Have they provided other financial assistance to you?

A. Motel room for some place to stay.

Q. Is it your intention to permanently move from the Arsenal Courts area?

A. Yes.

Q. And, you do not want to reside there. Is that correct?

A. I feel unsafe there.

Q. And, isn't it also true that you did not want to reside there at the time that this shooting occurred?

A. I wanted to reside there ever since I bought the house.

Q. Well, weren't you looking for a reason to get out of the Arsenal Courts area?

A. No I wasn't. I wouldn't have been putting money in the house.

Q. Well weren't you behind on your obligations regarding that house financially?

A. Taxes.

Q. You hadn't paid the taxes for about two years on it?"

With this question, the trial court stopped the cross-examination. The trial court found the question concerning property taxes to be collateral. Outside the presence of the jury, the judge allowed defense counsel to make an offer of proof and continue questioning Fuhlman regarding the issue of unpaid taxes. During this examination, Fuhlman admitted being behind on his taxes. However, he also said that the State had not paid the taxes for him.

Defense counsel argued that he was attempting to show the witness' bias through this line of questioning. According to the defendant, Fuhlman's testimony was his "ticket out" of a bad neighborhood and an attempt to obtain financial assistance by the State. The trial court was not convinced by the defendant's analysis.

The court noted that, one week before the trial, the State had made a motion to withhold its witness list. The court ruled that it had to be turned over to the defense. Subsequently, Fuhlman's home was riddled with bullets while he, his wife, and two young daughters were present. The court, *on its own initiative*, ordered Fuhlman be taken into protective custody and further ordered that the State share the costs with Fuhlman. Accordingly, the court noted that any financial assistance Fuhlman was receiving from the State was pursuant to the court order. Furthermore, the court noted that the State did not pay Fuhlman's real estate taxes or pay for his new home. Based on these facts, the trial court found the question regarding property taxes to be collateral.

The majority is indeed correct that a defendant has the right to cross-examine a witness for the purpose of showing the witness' interest, bias or motive to testify falsely. *People v. Britt*, 265 Ill. App. 3d 129, 145, 638 N.E.2d 282, 294 (1994). As *Britt* further notes, however, "a defendant does not possess the unbridled authority to question a witness." *Britt*, 265 Ill. App. 3d at 145, 638 N.E.2d at 294. Indeed, a defendant should have the "*opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis in original.) *Britt*, 265 Ill. App. 3d at 145, 638 N.E.2d at 294.

Accordingly, "the trial court enjoys wide latitude in limiting the cross-examination of a witness to prevent repetitive or minimally relevant questioning, harassment, prejudice, or confusion of the issues." *Britt*, 265 Ill. App. 3d at 146, 638 N.E.2d at 294. Thus, when a defendant claims that his cross-examination of a witness was unduly restricted, "we look to the testimony *allowed* rather than that *prohibited*." (Emphasis in original.) *Britt*, 265 Ill. App. 3d at 146, 638 N.E.2d at 294.

In the instant case, the trial court allowed the defendant to examine Fuhlman regarding the question of bias. As the above-recited testimony shows, the defense was allowed to fully explore the amount of financial aid that Fuhlman received from the State. The only question the trial court excluded in cross-examination was the question concerning property taxes. Even here, however, the trial court allowed the defense to make an offer of proof outside the presence of the jury. During that examination, it became eminently clear that

the State in no way assisted Fuhlman in the payment of his property taxes. Thus, continued questioning by the defense counsel on this matter was clearly collateral. Consequently, looking to what cross-examination was allowed by the trial court versus the single question disallowed by the court, it is clear that the judge allowed the jury to hear sufficient testimony to determine Fuhlman's credibility. See *Britt*, 265 Ill. App. 3d at 146, 638 N.E.2d at 294. Based on my review, I conclude that the trial court did not abuse its discretion when it found the question to be collateral.

Moreover, the defense "ticket out" theory was patently without merit. Contrary to the majority's statement that Fuhlman "wanted to leave the neighborhood for many years" (293 Ill. App. 3d at 864), Fuhlman testified that he did *not* desire to move from his home *prior* to the murder. Rather, it was only *after* the murder that he felt "unsafe." The trial court made it very clear that Fuhlman's insecurity about his safety stemmed from his home being shot up a week before trial.

In order for Fuhlman to have used his testimony as a "ticket out," he would have had to know in advance that (1) his home would be shot up; (2) the trial court on its own motion would place him into protective custody; and (3) the State would be ordered to share his costs. Given the near impossibility of this theory, I find the trial court was correct in not allowing the defense to pursue further examination on this issue.

For the reasons stated, I would affirm the judgment of the trial court.