FIRST DIVISION 

December 30, 1999

No. 1-98-2545

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee, 

v.

ROBERT AVERHART,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Timothy Szwed,

Judge Presiding.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a jury trial, Robert Averhart, was found guilty of possession of a controlled substance and  found not guilty of possession of controlled substance with intent to deliver.  The trial court sentenced defendant, a 36-year-old former Army sergeant with no criminal record, to probation for two years.  On appeal, defendant contends that the trial court improperly restricted his cross-

examination of the arresting officer regarding the officer's alleged beating of defendant during his previous arrest of the defendant.  We reverse and remand for a new trial.

I. BACKGROUND

A. Motion 
In Limine
 

On January 6, 1995, 11 months before the arrest in this case, Officer Smith arrested defendant for possession of a controlled substance and, during the course of the arrest, both defendant and Officer Smith sustained injuries.  As the result of that arrest defendant filed a complaint with the office of professional standards of the Chicago police department (OPS) against Officer Smith alleging  physical abuse, verbal abuse, and false arrest.  On June 20, 1995, the OPS complaint was found to be "not sustained."  On October 3, 1995, defendant was found not guilty of the possession charge that had generated the OPS complaint.  On December 14, 1995, defendant was arrested by Officer Smith a second time for possession of a controlled substance which is the subject matter of this case.

Before trial, the State made a motion 
in limine
 to bar the defendant from cross-examining Officer Smith about circumstances surrounding Smith's previous arrest of defendant and from introducing into evidence the fact that defendant was found not guilty of charges from that arrest.  The court granted the motion 
in limine
 and 
barred the defense from cross-examining Officer Smith about allegations that on January 6, 1995, he beat, kicked, verbally abused and falsely arrested the defendant.  The court ordered the defense to refer to the prior arrest as an "encounter" and prohibited defense counsel from presenting to the jury the factual basis for the OPS complaint.  The trial court limited cross-examination regarding the prior abuse by only allowing the defense to elicit the fact that an OPS complaint was filed and requiring the defense to use the words"serious charges" when referring to that fact.  The court ruled that if the defendant introduced the fact that "serious charges" had been made against Officer Smith by the defendant, then the State could introduce evidence that the complaint was not sustained by OPS.  However, the defendant could not introduce evidence of the fact that he was found not guilty of  possession of controlled substance from the earlier January 1995 arrest which had triggered the OPS complaint.

B. Trial Testimony 

Officer Smith testified that on December 14, 1995, he was working in a public housing tactical unit with Officer Parker.  Dressed in plain clothes, the two officers performed a "building check" at 3651-53 South Federal Street visiting each floor in the 17-story building.  At 8:30 p.m., while walking down the stairs, Officer Smith heard someone talking on the second-floor landing.  Officer Smith motioned to Officer Parker, who was behind him, to stop.  Officer Smith then proceeded to the third-floor landing and saw defendant on the second-floor landing.  Officer Smith stated that the man talking to defendant gave defendant some money, and defendant gave him a small plastic bag containing something white.  Defendant saw Officer Smith and ran.  Officers Smith and Parker caught defendant about 100 feet outside the building.  While Officer Parker handcuffed defendant, Officer Smith searched defendant, finding $10 and a plastic bag with 18 smaller packets.  The smaller packets contained 1.39 grams of cocaine.

On cross-examination, Officer Smith admitted that when he arrested the defendant on December 14, 1995,  he knew about allegations of a "serious nature" that defendant made against him previously to OPS.  He explained that the allegations were false and did not anger him because such accusations were not unusual given his work as an undercover officer.   Officer Smith acknowledged that, in a written statement to OPS regarding the instant case, he wrote that defendant was arrested while attempting to enter a vehicle; however, at trial he could not remember this fact.  Officer Smith also testified that his police report contained an error because it indicated that the drug transaction took place  in the hallway and not the stairway of the public housing building.  On redirect, Officer Smith testified that he never feared his job was in jeopardy and he was never censured or reprimanded as the result of the OPS complaint
. 

Officer Parker testified that he was following Officer Smith down the stairs of the CHA building when Officer Smith signaled him to stop.  Officer Parker did not hear anything.  Officer Parker testified that he and Officer Smith began chasing defendant and another male, but were only able to apprehend the defendant.  Once defendant was in custody, Officer Parker handcuffed him and Officer Smith searched him.  Officer Parker observed Officer Smith retrieve a plastic bag and some money from defendant's jacket pocket.  Officer Parker never observed Officer Smith remove anything from his own pocket. 

On cross-examination, Officer Parker denied that defendant had been attempting to get into a vehicle before he was arrested.  He admitted that he did not hear a noise on the stairway and did not see the drug transaction between defendant and the other individual. Officer Parker, however, admitted that a report he prepared for OPS following the arrest contradicted his trial testimony.  The OPS report indicated in direct opposition to his trial testimony that Parker heard a noise in the stairway, that he saw the drug transaction, and that defendant was arrested while attempting to enter a vehicle.  Officer Parker also acknowledged that the police report he prepared contradicted his trial testimony in that it stated the drug transaction occurred in the hallway and not the stairway.

Defendant testified that around 8 p.m. on December 14, 1995, the cab he was riding in was stopped at 39th Street and Indiana Avenue by Officers Smith and Parker, who were in an unmarked car and in full police uniform.  Officer Smith stated that because defendant had filed an OPS complaint against him, he would search defendant himself.  Officer Smith then "planted" the drugs on defendant and announced that he was going to put defendant in jail every time he saw him.  Defendant contends that the trial court abused its discretion when it precluded cross-examination of Officer Smith about defendant's allegations that before the arrest in this case Officer Smith had physically beaten him during an earlier arrest in January 1995.  It is defendant's theory that the prior unprovoked beating which triggered the OPS complaint was relevant to show Officer Smith's bias in this case and, as such, the trial court erred in restricting cross-examination.  

The State argues that the trial court properly used its discretion in restricting defendant's cross-examination of Officer Smith and that defendant did not sustain any prejudice because the jury heard testimony that defendant filed an OPS complaint against Officer Smith of a "serious nature."  The State acknowledged that the OPS complaint was relevant to the bias or motive of Officer Smith, but maintained that the specific conduct of which the officer was accused was so prejudicial as to outweigh its probative value.

II.  ANALYSIS

A. Constitutional Error

The defendant's right to confront witnesses against him, including cross-examination for the purpose of showing any interest, bias, prejudice or motive to testify falsely is guaranteed by both the federal and state constitutions.  U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8
.
  
The exposure of hostile motivation of a witness in testifying is a proper and important function of the constitutionally protected right of cross-examination.  
Davis v. Alaska
, 415 U.S. 308,  39 L. Ed. 2d 347
, 94 S. Ct. 1105 (1974).
 
 Such
 cross-examination may concern any matter that goes to explain, modify, discredit or destroy the testimony of the witness.  
People v. Aughinbaugh
, 36 Ill. 2d 320 (1967). 
 T
he jury is 
entitled to the details of the theory of defense so it can make an informed judgment, and thus t
he right to cross-examine is satisfied when counsel is permitted to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness."
  Davis
, 415 U.S. at 318, 39 L. Ed 2d at 355, 94 S. Ct. at 1111.   Although any limitation on the right to cross-examine requires scrutiny, a defendant's rights under the confrontation clause are not absolute.  
People v. Jones
, 156 Ill. 2d 225 (1993).  The confrontation clause guarantees an 
opportunity
 for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent the defense desires.  
Delaware v. Fensterer
, 474 U.S. 15, 20, 88 L. Ed. 2d 15, 19, 106 S. Ct. 292, 294 (1985).  
 

The constitutional guarantee and the common law right are separate, and the discretionary authority of the trial court to restrict the scope of cross-examination comes into play after the court has permitted, as a matter of right, sufficient cross-examination to satisfy the confrontation clause.  
People v. Rufus
, 104 Ill. App. 3d 467, 473 (1982).  
Limitation
 of a defendant's cross-examination of the bias or motive of a witness may violate a defendant's constitutional right to confront the witnesses against him and, therefore, "[a] trial court should * * * be unwilling to grant a motion 
in limine 
brought by the State if the result will be, for all practical purposes, an evisceration of the defendant's theory of the case."  
People v. Prevo
, 302 Ill. App. 3d 1038, 1050 (1999).  The test is whether limitation on cross-examination created a substantial danger of prejudice by denying defendant his right to test the truth of the testimony.  
People v. Harris
, 123 Ill. 2d 113, 145 (1988).
  To determine the constitutional sufficiency of cross-examination, a court looks not to what a defendant has been prohibited from doing, but to what he has been allowed to do.   
People v. Maldonado
, 193 Ill. App. 3d 1062, 1069 (1989).  If the entire record shows that the jury has been made aware of adequate factors concerning relevant areas of impeachment of a witness, no constitutional question arises merely because defendant has been prohibited on cross-examination from pursuing other areas of inquiry. 
 People v. Hines
, 94 Ill. App. 3d 1041, 1048 (1981).

The theory of the defense in this case is that Officer Smith framed the defendant because of Smith's alleged hostility toward defendant that originated from the circumstances surrounding the January 6, 1995, arrest, which triggered defendant's OPS complaint against Smith.  The facts of the prior arrest would have shown that Officer Smith arrested defendant on  January 6, 1995, a struggle ensued, and both defendant and Officer Smith were injured.  The defendant suffered a two-inch gash to the top right side of his head, a contusion to the left side of his face, a bruised and swollen left eye, and chest and abdominal pain.  The defendant's injuries required medical assistance.  Officer Smith suffered injury to his right hand.
  Defendant's OPS complaint was based on false arrest as well as physical and verbal abuse which allegedly occurred during the January 1995 arrest.  The hostility of Smith toward defendant allegedly escalated as the result of defendant being found not guilty on October 3, 1995 of the possession charge from the January 1995 arrest.  The defense contends that on December 14, 1995, Officer Smith  "planted" drugs on defendant and threatened to arrest defendant every time he saw him in order to get back at defendant for bringing the OPS complaint.  Since the OPS investigation could be reopened at any time, according to the defense theory of the case, Officer Smith planted drugs on defendant to discredit defendant and thereby foreclose any further investigation of the OPS complaint. 

To determine the constitutional sufficiency of the cross-examination we look to what the court allowed the defendant to do in developing the theory of defense in this case.  
Maldonado
, 193 Ill. App. 3d at 1069.  We take into consideration that the defense was allowed to refer to the previous allegations of abuse that provided the factual basis for the OPS complaint as "serious charges."  We further note the defense was allowed to refer to the previous relationship between Smith and defendant as an "encounter."  Allowing defendant to cross-examine Officer Smith using only these three words gave the jury an incomplete and inaccurate version of the factual basis for defendant's theory of the case lacking in constitutional sufficiency.  A review of the entire record fails to show that the jury had been made aware of adequate factors concerning relevant areas of impeachment to determine whether Officer Smith was worthy of belief.
  
Davis
, 415 U.S. at 318, 39 L. Ed. 2d at 355, 94 S. Ct. at 1111.  The jury was totally deprived of the factual basis underlying the OPS complaint, left to speculate as to what had happened during the previous incident and unaware of the alleged violent nature of the relationship between defendant and Officer Smith.  Moreover, the jury had inaccurate information regarding the fact the OPS investigation could be reopened and incomplete information as to the possible impact the investigation could have on Officer Smith's employment.  

The trial essentially became a credibility contest between Officers Smith and Parker and the defendant.  In resolving issues of credibility, the testimony of a police officer should be evaluated by the trier of fact in the same manner that the testimony of any witness is evaluated.  A witness is not more or less credible simply because that person is a police officer.  However, the right to witness confrontation is satisfied only when counsel is permitted to expose to the jury facts from which jurors can draw inferences relating to the credibility of the witness.  
Davis
, 415 U.S. at 318, 39 L. Ed 2d at 355, 94 S. Ct. at 1111.  
The restrictions placed by the court on defendant's cross-

examination of Officer Smith denied defendant his right to test the truth of Officer Smith's testimony.  The truth of what happened on December 14, 1995, was a fact question.  In order to assist the jury in making this determination, the nature of the relationship between the defendant and Officer Smith was critical.  Even the State acknowledged that the fact that an OPS complaint had been filed was relevant in determining if the officer had any bias or motive in testifying at trial.

In this case the trial court prohibited all substantive inquiry as to whether Smith was biased as a result of defendant's OPS complaint.  By cutting off all questioning about an event that the State conceded was relevant, and that a jury might reasonably have found provided the witness a motive for favoring the prosecution in his testimony, the court's ruling violated defendant's rights secured by the confrontation clause.  Officer Smith, the only witness who observed the drug transaction, was clearly the key prosecution witness.  The restriction of the defense cross-examination violated defendant's constitutional right to confront the key witness against him.  The limitation of cross-

examination created a substantial danger of prejudice by denying defendant his right to test the truth of Smith's testimony.  
Harris
, 123 Ill. 2d at 145.
  The result for all practical purposes was an evisceration of defendant's theory of the case.  
Prevo
, 302 Ill. App. 3d at 1050.

B. Abuse of Discretion

We  need not review the discretionary authority of the trial court to restrict cross-

examination, since defendant's constitutional right to witness confrontation has not been satisfied.  However, we note that even under an abuse of discretion standard the trial court's limitation on cross-

examination resulted in manifest prejudice to the defendant.  The confrontation clause of the sixth amendment does not prevent a trial court from using discretion in imposing some limits on defense counsel's inquiry into the potential bias of a prosecution witness.  
Delaware v. Van Arsdall
, 473 U.S. 673, 679, 89 L. Ed. 2d 674, 683, 106 S. Ct. 1431, 1435 (1986).  A trial court properly uses this discretion to preclude repetitive or unduly harassing testimony or to exclude evidence of bias that is too remote or uncertain.  
People v. Frieberg
, 147 Ill. 2d 326, 357 (1992).  Evidence that is not relevant and that would only confuse or mislead the jury is also properly excluded.  
People v. McElroy
, 81 Ill. App. 3d 1067 (1980).  Trial judges retain wide latitude insofar as the confrontation clause is concerned to use discretion in imposing reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the safety of the witness or interrogation that is repetitive or only marginally relevant. 
 Van Arsdall
, 473 U.S. at 679, 89 L. Ed. 2d at 683, 106 S. Ct. at 1435.

Factors to be considered in analyzing the discretionary authority of the trial court to restrict cross-examination of a testifying officer regarding his alleged previous abuse of the defendant include, but are not limited to, the following:  (1) whether the alleged abuse concerns defendant and a key witness  (
People v. Lenard
, 79 Ill. App. 3d 1046, 1050 (1979));
 (2) whether the alleged abuse is not collateral, but direct and positive (
People v. Greer
, 293 Ill. App. 3d 861, 863 (1997));
 
(3) 
whether cross-examination regarding the alleged abuse is relevant and not unduly repetitive (
People v. Tomes
, 284 Ill. App. 3d 514, 519 (1996)); and
 (4) whether cross-examination about the alleged abuse is not remote or uncertain, because it will demonstrate the witness has something to gain or lose by the testimony (
People v. Triplett
, 108 Ill. 2d 463, 475-76 (1985)).

In applying those factors here, we find the case of 
People v. Lenard
, 79 Ill. App. 3d 1046 (1979), instructive.  
In 
Lenard
, the defendant alleged that the arresting officers physically beat him at the time of his arrest for the crime for which he was on trial.  
Lenard
, 79 Ill. App. 3d at 1049.  
The defendant in 
Lenard
, like the defendant in the instant case, contended  the officers were not credible because they were motivated to give false testimony in order to cover up the beating.  
Lenard
, 79 Ill. App. 3d at 1050.  The trial court in 
Lenard
 rejected defense counsel's bias argument and prohibited cross-examination  regarding the alleged abuse.  The appellate court reversed and noted that evidence showing bias must be direct and positive, not remote, uncertain, or collateral.  
Lenard
, 79 Ill. App. 3d at 1050.  The court indicated that the evidence of abuse was not "too collateral or remote" because it did not concern conduct of an individual not testifying or conduct involving other arrestees.  
Lenard
, 79 
 Ill. App. 3d at 1050.  Like 
Lenard
, the evidence of abuse in this case did not concern a beating by a nontestifying officer or allegations that Officer Smith abused other arrestees, therefore the excluded evidence was not collateral or remote. 

Moreover, the trial court in 
Lenard
  found reversible error in the exclusion of evidence of the alleged physical abuse because the police officers were key witnesses whose credibility was important.  The court concluded that, where the defendant's theory is that the officers' testimony is not credible because they were attempting to cover up the beating, it is reversible error not to permit cross-examination that would tend to show bias, interest, or motive to testify falsely.  
Lenard
, 79 Ill. App. 3d at 1050.  
In this case, Smith is the key witness whose credibility was crucial.  Like 
Lenard
, the defense theory is Smith is not credible because he was motivated to frame defendant by discrediting defendant with a second drug arrest in order to foreclose further investigation of the previous beating.  Since this is the defense theory, cross-examination that would tend to show Smith's bias, interest or motive to frame the defendant is proper.  
Lenard
, 79 Ill. App. 3d at 1050.  
  

When a defendant's theory of the case is that the State's witness framed him, the evidence to show that the witness had a motive to testify falsely is "'hardly collateral'" and the defendant has the right to develop this theory.  
People v. Greer
, 293 Ill. App. 3d at 863.  In 
Greer
, the State called one eyewitness to link the defendant to the charged crime.  In return for the testimony of this witness, the State provided the witness several benefits, such as paying for a hotel room and helping the witness to relocate.  Defendant cross-examined the witness on these benefits.  The trial court, however, restricted defendant's cross-examination regarding financial problems of the witness and the desire of the witness to leave the area, thereby preventing defendant from developing his theory of the case that the witness framed the defendant in order to receive the relocation benefits.  
Greer
, 293 Ill. App. 3d at 863.  Reversing defendant's conviction, the appellate court held that defendant's evidence of the motive of the witness to testify falsely and frame defendant was relevant to defendant's theory of the case and defendant had the right to develop the details of his theory before the jury.  
Greer
, 293 Ill. App. 3d at 863-64.  

In the instant case, where defendant's theory is that Officer Smith framed him, 
there was direct evidence, albeit provided by the testimony of the defendant, that during the arrest Officer Smith told his partner that defendant brought an OPS complaint against him and invited defendant to run so he could shoot him.  Officer Smith told defendant that he would be going to jail because of what Smith had in his own pocket.  According to the defendant, Smith pulled a plastic bag out of his pocket, put it on defendant, arrested him and announced he was going to put defendant in jail every time he saw him.  That testimony, by connecting the OPS complaint to the instant case, made evidence of Smith's bias as demonstrated by the facts underlying the OPS complaint hardly collateral to defendant's theory of the case.  
People v. Gonzalez
, 104 Ill. 2d 332, 338 (1984).  Therefore, the defendant had the right to develop the details of his theory before the jury.  
Greer
, 293 Ill. App. 3d at 863-64.

Whether the cross-examination is of minimal relevance or is unduly repetitive are additional factors to be considered in analyzing the discretionary authority of the trial court to restrict cross-

examination.
  In this case the relevance of evidence that an OPS complaint had been filed has been acknowledged by the prosecution.  Cross-examination about the factual basis for the complaint would not have been 
repetitive because the trial court prohibited any evidence regarding the alleged abuse thereby ensuring that no details of the defense theory were admitted.  
Tomes
, 284 Ill. App. 3d at 519.  Therefore, cross-examination regarding Smith's motive to testify falsely and frame defendant should have been allowed because evidence regarding the alleged abuse would not have been of minimal relevance or unduly repetitive.
  

Whether the witness has the expectation of something to gain by his testimony is another one of the factors to be considered when placing limitations on cross-examination for being too remote or uncertain.  
Triplett
, 108 Ill. 2d at 475-76.  The OPS investigation was inconclusive due to insufficient evidence to prove or disprove the allegations
.  The trial court restricted defense counsel from cross-examining Smith about the fact that the OPS investigation could be reopened at any time if new evidence was obtained and about the fact that he could be discharged from the police department as a result of the OPS complaint.  The defendant was prevented from demonstrating  that Smith's bias and interest to color his testimony was directly connected to his fear of losing his job.  The defendant 
is entitled to inquire into any expectations the witness may have.  
Triplett
, 108 Ill. 2d at 475-76.  
According to the defense theory, what Smith expected to gain from framing defendant was to discredit defendant with the second arrest and thereby foreclose further investigation of the OPS complaint.  Therefore, cross-examination of Smith regarding the alleged abuse was not remote or uncertain because it would demonstrate what Smith had to gain by framing defendant and providing false testimony against defendant.  

The State relies on 
People v. Sykes
, 224 Ill. App. 3d 369, 375 (1991), to support the contention that the trial court properly exercised its discretion.  In 
Sykes
, the trial judge allowed testimony of the arresting officer's alleged misconduct toward the defendant but did not allow testimony that defendant filed an OPS complaint. 
 Sykes
, 224 Ill. App. 3d at 375.  Defendant cross-

examined the arresting officer on whether he pushed defendant down and pushed defendant's head into a railroad tie at the time of the arrest.  Although defendant did not testify, a witness he called testified that, following defendant's arrest, defendant's clothes were covered with blood and defendant was moaning and bleeding. 
 Sykes
, 224 Ill. App. 3d at 373.  The appellate court found no abuse of discretion by the trial court precluding evidence of the fact that defendant filed an OPS complaint because the defendant was allowed to cross-examine the arresting officer about the abuse alleged in the OPS complaint.  
Sykes
, 224 Ill. App. 3d at 375.

In this case, unlike 
Sykes
, the trial court did not allow the defense to cross-examine Officer Smith about the alleged abuse from the previous arrest which formed the factual basis for defendant's OPS complaint.   The jury heard that an OPS complaint was filed, that it contained serious charges, and that it was not sustained.  The jury, however, could only speculate as to the contents of the OPS complaint and, unlike 
Sykes
, did not have all the facts available concerning Smith's alleged misconduct to evaluate defendant's theory of the case and to evaluate the credibility of Officer Smith.  Having only knowledge of the fact that defendant brought an OPS complaint alleging "serious charges," the jury in this case could have easily disregarded the impact of the OPS complaint in light of Smith's testimony that the complaint was not sustained.  The court in 
Sykes
, unlike the trial court in this case, properly exercised its discretion because rather than restricting cross-examination about the abuse alleged in the OPS complaint, as was done in this case, it allowed cross-examination of the arresting officer about the abuse alleged in the OPS complaint.  

Our review of the factors to be considered in determining whether the trial court abused its discretion by limiting cross-examination leads us to conclude the court failed to impose reasonable limits.  The trial court's limitation on cross-examination precluded defendant from presenting his theory of defense that Officer Smith testified falsely and framed him motivated by hostility against defendant for bringing an OPS complaint.  
People v. Furby
, 228 Ill. App. 3d 1, 4-5 (1992).  The alleged abuse concerned defendant and Officer Smith, the key prosecution witness.  
Lenard
, 79 Ill. App. 3d at 1050.  To evaluate the credibility of Officer Smith the jury was entitled to know not only that an OPS complaint was filed, but to know the factual basis underlying it.  
Prevo
, 302 Ill. App. 3d at 1047.  
The evidentiary link between the alleged abuse and Smith's testimony was direct and positive.  
Greer
, 293 Ill. App. 3d at 863.
  
 Cross-examination about the abuse would not have been repetitive since the trial court barred all evidence of the factual basis for the OPS complaint.  
Tomes
, 284 Ill. App. 3d at 519.  Evidence of Smith's bias was not too remote or uncertain and hardly collateral. 
 Gonzalez
, 104 Ill. 2d at 338.  The motive of the witness to testify falsely and frame defendant was clearly relevant to defendant's theory of the case.  
People v. Betts
, 116 Ill. App. 3d 551, 554 (1983).  
Limitation of cross-examination prevented defendant from demonstrating that what Smith had to gain from framing defendant was to discredit defendant with the second arrest and foreclose any further investigation of the abuse alleged in the OPS complaint.  
Triplett
, 108 Ill. 2d at 475-76. 

Thus, the trial court's restriction of defendant's cross-examination prevented the defense from demonstrating Officer Smith's bias, interest or motive to testify falsely and was an abuse of discretion resulting in manifest prejudice to defendant.  Under the facts of this case, we conclude that defendant should be permitted to cross-examine Officer Smith about the circumstances surrounding Smith's previous arrest of defendant which provided the factual basis for the OPS complaint.  The defendant should be allowed to cross-examine Officer Smith about the fact that the OPS  investigation could be reopened, and the effect of the complaint on his employment, including possible discharge.  The purpose of such cross-examination is to demonstrate the reasons why Officer Smith would have a motive to testify falsely and provide the factual basis for defendant's theory of defense that the OPS complaint motivated Smith to frame defendant. 
  

C. Admissibility of Evidence 

We next address the admissibility of the result of the OPS hearing and the result of the defendant's trial for the January 1995 charges since these admissibility issues are likely to reoccur on retrial.  
The defense argues that the result of the OPS hearing should not have been admitted into evidence.  We disagree.  While evidence of the fact that the complaint was "not sustained" by OPS constitutes an out-of-court statement, the prosecution is offering this evidence not for its truth, but for its effect on Officer Smith's course of conduct to rebut defendant's allegation that Officer Smith framed defendant because defendant filed an OPS complaint
.  See 
People v. Brandon
, 283 Ill. App. 3d 358, 365 (1996) ("[t]estimony of an out-of-court statement not offered for its truth, but to show or explain the course of conduct of another, does not constitute hearsay"); 
People v. Peterson, 
171 Ill. App. 3d 730, 735 (1988) (out-of-court statements offered to show the effect on listener's state of mind are not hearsay
 
).  Officer Smith's conduct and state of mind have been put in issue by the defense theory that Officer Smith was motivated to testify falsely in this case out of hostility against defendant for bringing the OPS complaint.  Smith's knowledge that the OPS complaint was not sustained corroborates the State's theory that the OPS complaint had no negative impact on Officer Smith and rebuts the defendant's theory that Smith provided false testimony motivated by Smith's hostility against defendant.

Using the same analysis, the defense should be allowed to introduce the fact that defendant was found not guilty in October 1995 of the possession charge from the January 1995 arrest.  
The defendant did not offer the fact he was found not guilty of the previous charge for its truth but offered it for its impact on Officer Smith's state of mind and to explain Smith's conduct.  
Peterson
, 171 Ill. App. 3d at 735.  
 
Officer Smith's knowledge of the finding of not guilty supports defendant's theory that Officer Smith's motive to testify falsely in the instant case escalated when defendant was found not guilty of the original possession charge from January 1995.  On October 3, 1995, Judge Moran granted defendant's motion for directed finding of not guilty after Officer Smith and his partner Officer Calhoun testified against defendant regarding the charges from the January 6, 1995, arrest.  It is the defendant's theory that the finding of not guilty by Judge Moran undermined the legitimacy of those charges and gave credibility to the OPS complaint, which included an allegation of false arrest as well as physical and verbal abuse based on those charges.  
Defendant contends that the not guilty finding motivated Officer Smith to discredit defendant by arresting him a second time and thereby foreclose further investigation into the OPS complaint.  Defense counsel argued to be allowed to cross-examine Smith as to the impact of the not guilty finding in order to develop evidence of Smith's motivation to frame defendant.

Based on the totality of the circumstances of this case, we conclude the fact that the OPS complaint was not sustained and the fact the defendant was found not guilty of the charges arising out of the arrest that triggered the OPS complaint are admissible on retrial.  Both the prosecution and defendant are offering these facts for their effect on Officer Smith's state of mind and to explain his conduct.  
People v. Thomas
, 296 Ill. App. 3d 489, 499 (1998).  As such, there is no hearsay problem, since neither finding was offered for the truth of the matter asserted.     

D. Harmless Error

The State argues that even if the trial court erred, any error was harmless because defendant sustained no prejudice and the trial produced overwhelming evidence of defendant's guilt.  For harmless error to apply when defendant's constitutional rights were violated, the error must be harmless beyond a reasonable doubt. 
 
Chapman v. California
, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828, (1967).  In 
People v. Wilkerson
, 87 Ill. 2d 151, 157 (1981), the supreme court listed three recognized ways that a constitutional error may be harmless error beyond a reasonable doubt: (1) if the error did not contribute to defendant's conviction; (2) if overwhelming evidence supported defendant's conviction; and (3) if the evidence limited was cumulative or corroborative  of other evidence properly  presented to the jury.  
We find that none of these factors are present in this case.  

First, we cannot say the exclusion of the facts of Officer Smith's previous alleged beating of defendant did not contribute to the defendant's conviction.  Any error in restricting cross-

examination may be deemed harmless where the prosecution does not rely solely on the credibility of the witness sought to be cross-examined.  
People v. Patterson
, 88 Ill. App. 3d 168, 175 (1980).  Officer Smith was the only witness at trial to testify that he saw defendant hand what he suspected to be a controlled substance to an unknown person.  He was also the witness closest to the defendant at the time the alleged drug transaction occurred.  And he was the witness who discovered the controlled substance in defendant's pocket.  His testimony included an incriminating account of the defendant's actions before and after the drug sale.  The testimony of Officer Smith, the key prosecution witness remained untested as to his bias or motive to testify falsely, thereby creating a substantial danger of prejudice since defendant was denied the right to test the truthfulness of the key witness.  
Harris
, 123 Ill. 2d at 145.    

Officer Parker did not observe the drug transaction.  We note that, since Smith was the only witness to observe the drug transaction, the testimony of Smith was clearly outcome determinative.  Moreover, Smith's testimony was impeached by Officer Parker and by Smith's own report.  Officer Smith's own partner, Officer Parker, failed to corroborate Smith's testimony regarding Smith's observation of defendant engaging in a drug transaction.  To disallow the defense to test Smith's credibility with the facts of Officer Smith's previous alleged beating of defendant was not harmless error.  This case was a credibility battle between Officer Smith and defendant.  We cannot say that, under these circumstances, where the credibility of Smith was outcome determinative, the error did not contribute to defendant's conviction.  
Patterson
, 88 Ill. App. 3d at
 175.
 

Second, the evidence in the case does not overwhelmingly support the conviction.  The evidence, other than Officer Smith's testimony, supporting the conviction consisted of Officer Parker's testimony.  However, Officer Parker's testimony itself was impeached and cast doubt on the testimony of Officer Smith.  Officer Parker admitted several inconsistencies between the reports he wrote for the OPS investigation and his trial testimony.  Under oath at trial, Officer Parker testified that he did not observe the drug transaction; he heard no noises related to the drug transaction; he did not observe the defendant on the stairway; he did not observe the defendant try to get into a car; and only Officer Smith heard and observed these events.  In written documents signed by Parker and prepared for OPS shortly after the arrest in the instant case, Officer Parker, however, stated exactly the opposite from his sworn trial testimony.  Parker indicated to OPS that he heard a noise related to the drug transaction on the stairway; that he actually observed the defendant on the stairway conducting a drug transaction; that defendant was arrested attempting to get into a car; and that both he and Officer Smith observed these events.  Officer Parker at trial under oath was impeached on each and every important issue relating to his observation and arrest of defendant.

Moreover, Parker's testimony at trial failed to corroborate the trial testimony of Officer Smith at crucial times during the contact with the defendant.  For example, he did not hear the noise on the stairway which Smith testified drew his attention to the drug transaction.  More importantly, Officer Parker, unlike Officer Smith, did not observe the drug transaction, and Officer Parker only saw the drugs when Officer Smith allegedly removed them from the defendant's pocket.  Officer Parker's testimony undermined Smith's credibility by failing to corroborate Smith's version of defendant's criminal conduct at crucial times during the incident.  We cannot say that the impeached testimony of Officer Smith and the impeached testimony of Officer Parker provided overwhelming evidence of defendant's guilt.

Finally, evidence of the previous alleged false arrest, physical and verbal abuse in connection with the January 6, 1995, arrest of defendant by Officer Smith and the resulting OPS allegations would not have been cumulative or corroborative of other evidence 
since the trial judge completely precluded any evidence of these matters.  The jury was limited as to its awareness of factors concerning relevant areas of impeachment when the court ordered the defense to refer to the previous incident as an "encounter" and to refer to the allegations in the OPS complaint as "serious charges."  Allowing defendant to cross-examine Officer Smith using only these words gave the jury an incomplete, inaccurate and sanitized version of the facts totally lacking in constitutional sufficiency.  Thus, the trial court's denial of the defendant's right to cross-examine Officer Smith cannot be held to have been harmless error beyond a reasonable doubt and the defendant is entitled to a new trial.   A review of the record establishes sufficient evidence to prove defendant guilty beyond a reasonable doubt of the offense of possession of a controlled substance and double jeopardy does not bar retrial of this offense.  
People v. Taylor
, 76 Ill. 2d 289, 309-10 (1979). 

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded consistent with this opinion.

Reversed and remanded.

RAKOWSKI and GALLAGHER, JJ., concur.