2020 IL App (1st) 170293-U

FIRST DISTRICT
SECOND DIVISION
March 10, 2020

No. 1-17-0293

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 14 CR 16962 |
| | ) | |
| ANTONIO MARTINEZ, | ) | Honorable |
| | ) | Paula M. Daleo, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's convictions affirmed because no prosecutorial misconduct occurred and his constitutional right to cross-examine witnesses was not violated. Pursuant to Illinois Supreme Court Rule 472(e), we remand this matter to allow defendant to file a motion addressing the error in the mittimus.

¶ 2    Following a jury trial, defendant Antonio Martinez was convicted of robbery and aggravated battery and sentenced to concurrent, respective prison terms of six years and three years. Defendant appeals, arguing (i) prosecutorial misconduct, (ii) prejudicial limitation of cross-

examination, and (iii) incorrect mittimus.[1] For the following reasons, we affirm his convictions and remand to the circuit court of Cook County so that defendant may file a motion to correct the mittimus pursuant to Illinois Supreme Court Rule 472(e) (eff. May 17, 2019).

¶ 3   In the early morning hours of September 7, 2014, defendant was arrested near his home for the aggravated robbery of Chris Pisarczyk and aggravated battery of Pisarczyk and Sean Kennedy.

¶ 4   Prior to trial, Kennedy was arrested and charged with the offense of driving under the influence (DUI). The State filed a pre-trial motion *in limine* to preclude the defense from inquiring about the facts of the DUI charge. The court ruled that the defense "was entitled to question the witness [about his arrest] to show whether there was any bias, interest, or motive to testify such as the State made an offer of leniency *** or disposition with regard to that case." The court also ruled that the defense could not go into the actual facts of the case absent an offer of proof.

¶ 5   At trial, Pisarczyk testified that on September 6, 2014, he was celebrating his birthday at his friend Kennedy's house in Berwyn, Illinois. At about 2 or 2:30 a.m., he and Kennedy left the house and walked towards Kennedy's car so that Kennedy could drive him home. Even though Pisarczyk drank about 10 beers and smoked "a couple bowl hits" that night, he "knew what was going around, you know, what was going on."

¶ 6   As they walked to Kennedy's car, Pisarczyk noticed defendant and another guy in an alley about 20-25 feet away. As he and Kennedy continued to walk, Pisarczyk heard defendant yell, "King Love," which he took to mean that defendant was "trying to gang bang to me, trying to see what I was repping." He and Kennedy did not respond and continued walking as Kennedy smoked a cigarette.

---

[1]Defendant also argued that his aggravated battery conviction must be vacated for violating the one-act, one-crime rule, but conceded in his reply brief that his convictions for aggravated battery and robbery were valid under *People v. Smith*, 2019 IL 12901, which was issued after his opening brief was filed.

¶ 7         As Pisarczyk and Kennedy reached Kennedy's car, defendant and the other guy approached them. Defendant wanted to take a puff of Kennedy's cigarette, and Kennedy handed it to him. As soon as Kennedy said that "he recognized the other guy from high school," defendant flicked the cigarette at Kennedy's face and punched him. After that, "everything escalated."

¶ 8         Defendant started punching Pisarczyk on his head, side, and arms. Pisarczyk "was a little messed up," but tried to defend himself against the punches by putting his arms up over his face. Defendant pushed Pisarczyk against the car and held onto the neck of Pisarczyk's shirt. While still holding on to Pisarczyk's shirt, defendant lifted his own shirt up above the waistband of his pants with his free hand and demanded that Pisarczyk "give him [his] stuff." In Pisarczyk's experience, this gesture was intended to show "that [defendant] had a weapon." Pisarczyk gave defendant his cellphone and $20. Defendant said, "I want more," but Pisarczyk did not give him anything else. When defendant looked away, Pisarczyk made a run for it. Pisarczyk's shirt was ripped during the altercation.

¶ 9         Pisarczyk ran toward Kennedy, who was on his cellphone with the police at the end of the block. Defendant and his companion chased after them. While Pisarczyk ran to Kennedy's house for help, Kennedy kept running down the street. By the time Pisarczyk returned to the scene, defendant was being detained by police officers, sitting on the curb in handcuffs. Pisarczyk positively identified defendant as the guy who beat him up and stole his property.

¶ 10         Kennedy testified that as defendant and the other guy approached them, defendant initiated a fight by flicking the cigarette at him and punching him in the face. Kennedy ran away and called the police, leaving Pisarczyk behind. When he next saw Pisarczyk, he observed that his shirt was "ripped and kind of scratches on his neck, and then he told me that they took his phone."

¶ 11         Kennedy acknowledged that between noon and 3 a.m., he had four or five beers and smoked marijuana, but agreed to drive Pisarczyk home because he no longer felt the effects of the

marijuana from "a few hours before." He admitted that the night of the altercation was not the first time he had smoked marijuana or consumed alcohol.

¶ 12        Regarding his pending DUI case, Kennedy testified that he "would not mind if the State's Attorney offered [him] a break in exchange for his testimony," but that he had not been offered "any leniency." He confirmed that he had been subpoenaed to testify at trial.

¶ 13        Berwyn Police Officer Robert Brenka testified that at around 3 a.m. on September 7, 2014, he was dispatched to the scene of a fight. Upon arrival, he observed two men, one of whom he identified as defendant, running away from his squad car. Brenka chased the men on foot. Other officers arrived and pulled up directly in front of defendant, while Kennedy yelled, "that's him, that's him, that's him." Defendant was arrested "right by his house."

¶ 14        Brenka confirmed that after defendant had been arrested, Pisarczyk told him that his cellphone had been stolen. Brenka recovered the cellphone about a half a block away from the same area where he had just chased defendant.

¶ 15        Both Kennedy and Pisarczyk positively identified defendant as being involved in the altercation. Kennedy and Pisarczyk did not appear to be under the influence of alcohol or drugs. Brenka observed a bump and some redness or swelling on Kennedy's face. He also observed that Pisarczyk's shirt was torn and that he had scratches on his arm.

¶ 16        The jury found defendant guilty of aggravated battery and robbery of Pisarczyk and not guilty of aggravated battery of Kennedy. He was sentenced to concurrent prison terms of six years on the robbery conviction and three years on the aggravated battery conviction.

¶ 17                                ANALYSIS

¶ 18                        A. Prosecutorial Misconduct

¶ 19        Defendant raises several instances of alleged misconduct by the prosecutor at trial. Specifically, he contends that the prosecutor violated the "advocate-witness rule," by injecting "her

own credibility into the trial during the examination of Sean Kennedy," and made improper comments during closing arguments.

¶ 20 Defendant concedes that he has forfeited review of his prosecutorial misconduct claims because they were not raised in a posttrial motion, but urges review under the plain error doctrine, or, alternatively, as a matter of ineffective assistance of counsel. Forfeited errors are only reviewable where "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error or (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2014 IL 117094, ¶ 48. Under either prong, the defendant bears the burden of persuasion and the failure to meet that burden requires the procedural default to be honored. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). The initial step in a plain error analysis is to determine whether an error occurred, because absent error, there can be no plain error. *Id.*; *Piatkowski*, 225 Ill. 2d at 565; *People v. Cox*, 2017 IL App (1st) 151536, ¶ 52.

¶ 21 Defendant first challenges the following exchange during Kennedy's redirect examination:

"Q: Mr. Kennedy, isn't it true that I had a conversation with you today and yesterday and told you that there will not be any leniency in your matter that's pending in this courthouse; correct?

A: Yes, ma'am."

Defendant claims that the prosecutor injected her own credibility into the trial by asking, "isn't it true," effectively transforming her role from advocate to witness. We disagree.

¶ 22 During cross-examination, the defense inferred that Kennedy testified in hopes of receiving favorable treatment in his pending DUI case, a valid line of questioning designed to reveal any

bias, interest, or motive to testify falsely. *People v. Sanders*, 143 Ill. App. 3d 402, 407 (1986). Specifically, counsel asked:

> "Q: You certainly would not mind if the State's Attorney offered you a break in exchange for your testimony today; is that correct?
>
> A: No, I wouldn't mind."

On redirect, the prosecutor permissibly clarified that Kennedy had "not been promised anything in exchange for [his] testimony." See *People v. Manning*, 182 Ill. 2d 193, 216 (1998) (counsel on redirect examination may ask questions designed to remove unfavorable inferences or impressions raised on cross-examination); *People v. Johnson*, 2013 IL App (1st) 111317, ¶ 43 (same); *People v. Kirchner*, 194 Ill. 2d 502, 536 (2000) (the scope of redirect examination is within the sound discretion of the trial court).

¶ 23    Defendant also alleges that prosecutorial misconduct occurred during closing arguments. Prosecutors have great latitude during their closing arguments, but they may not argue assumptions or statements of fact not based on the evidence. *People v. Wilson,* 2014 IL App (1st) 113570, ¶ 47. A closing argument must be considered as a whole, and the challenged remarks must be viewed in context. *People v. Simms*, 192 Ill. 2d 348, 397 (2000). A reviewing court will not reverse a jury's verdict based upon improper remarks made during closing arguments unless the comments resulted in substantial prejudice to the defendant, which is defined as "a material factor in the defendant's conviction." *People v. Thompson,* 2013 IL App (1st) 113105, ¶¶ 79-80. A defendant seeking reversal of his conviction based on an allegedly improper closing argument faces a "substantial burden." *People v. Green*, 2017 IL App (1st) 152513, ¶ 77.

¶ 24    The parties disagree on the applicable standard of review for claims arising from improper closing arguments. Defendant advocates for a *de novo* standard and the State advocates for the more deferential abuse of discretion standard. In *People v. Cook*, 2018 IL App (1st) 142134, ¶ 64,

this court clarified the applicable standard of review, finding that "[w]hereas a reviewing court applies an abuse of discretion analysis to determinations about the propriety of a prosecutor's remarks during argument (*People v. Blue*, 189 Ill. 2d 99, 128 (2000); *People v. Hudson*, 157 Ill. 2d 441 401 (1993)), the court reviews *de novo* the legal issue of whether a prosecutor's misconduct, like improper remarks during argument, was so egregious that it warrants a new trial (*People v. Wheeler*, 226 Ill. 92, 121 (2007))." See *People v. Phagan*, 2019 IL App (1st) 153031, ¶ 54 (adopting the abuse of discretion standard of review regarding allegations of prosecutor error during closing argument). Under either standard, no error occurred in this case. See *People v. McNeal*, 2019 IL App (1st) 180015, ¶ 44.

¶ 25 Defendant alleges that the prosecutor improperly bolstered Kennedy's and Pisarczyk's credibility by stating twice during rebuttal that they were "normal guys" who "came [into court] telling the truth." Defendant asserts that the record does not support the prosecutor's opinion, which he argues is "an intuitive judgment that lies within the province of the jury."

¶ 26 It is well established that prosecutors may comment on the credibility of witnesses, but may not vouch for the credibility of a government witness or invoke the credibility of the state's attorney's office to bolster a witness's testimony. *People v. Jackson,* 399 Ill. App. 3d 314, 318 (2010). But a prosecutor is permitted to comment on "the evidence and any fair, reasonable inferences it yields, even if those inferences reflect negatively on the defendant." (Citations omitted.) *People v. Nicholas,* 218 Ill. 2d 104, 121 (2005).

¶ 27 Here, defense counsel invited the prosecutor's comments by arguing that Kennedy "had a motive to lie" because of his pending case and "was trying to please the State's Attorney with his answers" and Pisarczyk was "going to say what he can to help his buddy out." See *People v. Glasper*, 234 Ill. 2d 173, 204, 207 (2009) (prosecutor is entitled to respond to the defense's theory of the case); *People v. Richardson,* 123 Ill. 2d 322, 356 (1988) (statements provoked or invited by

the defense counsel's closing argument will be held proper). In response, the prosecutor argued that Pisarczyk and Kennedy were "just normal guys," celebrating Pisarczyk's birthday, who "were honest *** about *** drinking and smoking" and had "no beef against defendant." Taken in context and considering the closing argument as a whole, the prosecutor's comments did not constitute improper vouching or bolstering.

¶ 28    Defendant also asserts that the prosecutor called him a "predator," which was the equivalent of calling him an animal, inflaming the passions and prejudices of the jury against him. We disagree.

¶ 29    The prosecutor began her closing by stating that "He was the predator. Chris and Sean were the prey."[2] This isolated comment, when viewed in context, did not exceed the bounds of fair comment on the actions taken by defendant in this case. See *People v. Sims*, 403 Ill. App. 3d 9, 21 (2010) (prosecutor's remark that the defendant was lying in wait looking like an animal waiting for his prey did not equate the defendant to an animal); *People v. Williams*, 146 Ill. App. 3d 767, 772 (1986) (prosecutor's statement that "the defendant picked out, stalked and captured his victim like a predator" did not deny defendant a fair trial); see *contra People v. Johnson*, 208 Ill. 2d 53, 80 (2003) (prosecutor's comment that "[i]f you run with the pack, you share the kill" improperly referred to defendant as an animal.").

¶ 30    Defendant claims that the prosecutor improperly commented on his decision not to testify by arguing he "told you why *** [h]e told you through his actions," emphasizing that he said nothing at trial. When read in context, the argument that defendant "told you why" through his actions was a reasonable comment designed to infer defendant's intent through his conduct.

---

[2]The defense used the same terminology in arguing that "Kennedy would have been a predator that night had he gotten into that car and drove." As we stated in *People v. Sandifer*, 2016 IL App (1st) 1333397, ¶ 57, "Given the similarly between defense counsel's comments and the State's comments, it is disingenuous for defendant to challenge the State's comments on appeal."

¶ 31    Defendant also challenges the State's argument that the evidence that "defendant and his buddy" punched both victims was unrebutted. In *People v. Keene*, 169 Ill. 2d 1, 21 (1995), the court noted that "the State is free to point out what evidence was uncontradicted so long as it expresses no thought about who specifically–meaning the defendant–could have done the contradicting." From our review of this record, the argument that "defendant and his buddy punched both victims who came to testify *** [t]hat's unrebutted *** [t]here's no evidence to the contrary" did not cross the line. Likewise, the prosecutor's argument that the State's witnesses had "no motive to lie" was proper given defendant's apparent theory that this was a case of mistaken identity and that defendant was simply "running home" that night because he lived in the area. *Glasper*, 234 Ill. 2d at 207; *People v. Banks*, 237 Ill. 2d 154, 185 (2010); *People v. Temple*, 2014 IL App (1st) 111653, ¶ 71.

¶ 32    Finally, defendant argues that the prosecutor's comments that Pisarczyk did not want to "get killed" over his cellphone, he wanted to "save his own life" and was "not risking [his] life over a phone" were unreasonable because Pisarczyk never testified that he feared for his life. Given Pisarczyk's testimony that he was repeatedly punched by defendant, whom he believed to be in possession of a weapon, these comments were reasonable inferences based on the evidence introduced at trial.

¶ 33    All of the alleged errors, when taken in their entirety and in context, fall squarely within the realm of permissible argument. The record does not support a finding that the jury's verdict would have been different absent the challenged remarks. See *People v. Austin*, 2017 IL App (1st) 142737, ¶ 55 (defendant receives an unfair trial when the prosecutor's comments render it impossible to determine whether or not a guilty verdict resulted from them); *People v. Jones*, 2016 IL App (1st) 141008, ¶ 23 (defendant entitled to a new trial based on improper prosecutor comments only "if the jury could have reached a contrary verdict in their absence").

¶ 34    Because we find that no "clear and obvious" errors occurred at trial, the doctrine of plain error is inapplicable. For those same reasons, we decline to consider defendant's ineffective assistance of counsel claims. *People v. Moon*, 2019 IL App (1st) 161573, ¶ 47; *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 59.

¶ 35    Finally, defendant urges us to "reverse and remand for a new trial under the closely balanced prong of plain error." Plain error review under the closely balanced prong "requires a commonsense, contextual analysis of the totality of the evidence." *Belknap*, 2014 IL 117094, ¶ 49. In this case, Kennedy and Pisarczyk's consistent testimony was corroborated by Officer Brenka, the evidence recovered at the scene, and the photographs of the injuries inflicted upon the victims. Viewing this evidence in a "commonsense manner in the context of the totality of the circumstances," we conclude that the evidence in this case was not closely balanced. *Id.* at 62. Accordingly, the defendant here has failed to show that "there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." *People v. Herron*, 215 Ill. 2d 167, 187 (2005).

¶ 36                    B. Limiting the Scope of Cross-Examination

¶ 37    Defendant claims that his right to cross-examination was violated when the trial court prohibited defense counsel from questioning Kennedy about the specific facts of his DUI case and his overall tolerance for marijuana.

¶ 38    The sixth amendment of the United States Constitution (U.S. Const., amend VI) and article 1, section 8 of the Illinois constitution (Ill. Const. 1970, art. I, § 8) guarantee a defendant the right to confront the witnesses against him, which includes the right to cross-examine witnesses. *People v. Sanders*, 2019 IL App (1st) 160718, ¶ 22; *People v. Whitfield*, 2014 IL App (1st) 123135, ¶ 25. However, the sixth amendment only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent the defense

desires." (Emphasis in original.) *People v. Averhart*, 311 Ill. App. 3d 492, 497 (1999). The trial court may exercise its discretion and place limits on the scope of cross-examination, and the decision to do so will not be disturbed on appeal absent an abuse of that discretion. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 102 (1995); *Sanders*, 2019 IL App (1st) 160718, ¶ 22. An abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court. *Peach v. McGovern*, 2019 IL 123156, ¶ 25.

¶ 39    Here, the trial court permitted defense counsel to ask Kennedy about both his pending DUI charge and marijuana use. Specifically, Kennedy testified (i) that he "would not mind" if the State's Attorney "offered him a break" in his DUI case, (ii) that he was testifying pursuant to a subpoena, (iii) that he smoked marijuana and drank four or five beers the night of the altercation, and (iv) that his DUI case was being prosecuted by the same office in the same courthouse as the instant case. We find that defense counsel's opportunity to cross-examine Kennedy about his pending case and marijuana use was not unduly restricted. *Averhart*, 311 Ill. App. 3d at 497; *People v. Pitchford*, 314 Ill. App. 3d 72, 82 (2000); see *People v. Edwards*, 218 Ill. App. 3d 184, 194 (1991) (the relevant consideration is not "what a defendant had been prohibited from doing, but to what he had been allowed to do.").

¶ 40                                    C. Correcting the Mittimus

¶ 41    Finally, defendant contends and the State agrees that the mittimus should be corrected to reflect convictions for robbery and aggravated battery, not aggravated robbery and aggravated battery. Because defendant raises this issue for the first time on appeal, "we remand to the circuit court to allow [defendant] to file a motion" to correct the mittimus pursuant to Illinois Supreme Court Rule 472(e), Ill. S. Ct. R. 472(e) (eff. May 17, 2019). *People v. Scott*, 2019 IL App (1st) 163022, ¶ 26.

¶ 42   For the reasons stated, we affirm defendant's convictions for the robbery and aggravated battery of Pisarczyk and remand pursuant to Rule 472(e).

¶ 43   Affirmed and remanded.