2019 IL App (1st) 152431-U
No. 1-15-2431
December 31, 2019

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, )<br><br>Plaintiff-Appellee, )<br><br>v. )<br><br>ANTHONY ALEXANDER, )<br><br>Defendant-Appellant. ) | Appeal from the Circuit Court Of Cook County.<br><br>No. 14 CR 9757<br><br>The Honorable Thomas J. Byrne, Judge Presiding. |

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Griffin and Justice Pierce concurred in the judgment.

**ORDER**

¶ 1        *Held*: Defendant was not denied his right to cross-examine a witness because the entire record shows that the jury was made aware of adequate factors concerning areas of impeachment. The trial court did not abuse its discretion when it denied defendant's motion for a new trial when it admitted a mug shot of the defendant from the day of his arrest, or when it did not permit defense counsel to pose additional questions to a potential juror concerning bias against police after the court learned that the juror could not put aside his distrust of the police and decide the case fairly.

¶ 2                                    BACKGROUND

¶ 3        Defendant Anthony Alexander was convicted in a jury trial of possession of a controlled substance with intent to deliver (cocaine), possession of a controlled substance with intent to deliver (heroin), and delivery of a controlled substance (heroin). Alexander was sentenced to concurrent terms of 8 years, 8 years, and 6 years, respectively, for the above convictions.

¶ 4        On August 19, 2014, Alexander filed a Motion to Quash Arrest and Suppress Evidence contending that his warrantless arrest was made without probable cause and requesting the court suppress all direct and indirect evidence from the arrest.

¶ 5        On November 10, 2014, the trial court held a hearing on the motion to quash, and the defense called Chicago Police Officer Hanranhan. Hanranhan testified that on May 4, 2014, while driving, he observed Alexander in front of a house at 3544 West Grenshaw accept money from an individual and tender the same individual a small object. Hanranhan was about one hundred feet away and approaching Alexander. Hanranhan parked the car and exited together with his partner, Officer Bouch. Hanranhan detained Alexander and Bouch approached the other individual who began walking up the stairs of the house. Hanranhan performed a custodial search on Alexander and recovered "many bags of suspect heroin" and "suspect crack cocaine." The items were sent to the Illinois State Police Crime Lab and tested positive for heroin and cocaine.

¶ 6        On cross-examination, Hanranhan testified that the other individual was named TJ Smith. Hanranhan performed the custodial search on Alexander only after Bouch informed Hanranhan that Bouch recovered one item of heroin that Smith dropped. Hanranhan recovered $28 from Alexander and "items from [Alexander's] front hoodie pocket."

¶ 7        On redirect examination, Hanranhan testified that he recovered 32 bags of suspect heroin and 13 bags of suspect crack cocaine from Alexander's hoodie pocket. The defense rested and requested the court grant the motion to quash because there was no probable cause to arrest Alexander.

¶ 8        The trial court denied the motion to quash finding that Hanranhan testified credibly and Alexander's detention was justified because Hanranhan did not search Alexander until Hanranhan learned that Smith dropped a bag of suspect heroin.

¶ 9        Jury selection commenced on April 1, 2015. During *voir dire*, the trial judge asked the venire a series of questions including "do you understand that under the law the testimony of a police officer is not to be treated any differently than any other witness, that is, a police officer's testimony is entitled to the same consideration, no more no less, than any other witness who is not in law enforcement?" The court asked those who did not agree to raise their hands, but no one did.

¶ 10        The court then examined the potential jurors individually, including prospective juror PK. PK explained that he had been arrested three different times in the 1970's. In all three arrests, PK claimed to have done no wrong and that he was arrested because police picked up everyone near each incident. PK stated that those incidents would interfere with his ability to be fair and impartial because he "doesn't believe or trust police these days." PK further stated that he could not put the three incidents aside to decide the case fairly. PK noted that he knew a few police officers in his life.

¶ 11        At the conclusion of *voir dire*, defense counsel sought to question PK, but the trial court denied defense counsel's request because it did not want the questions to PK to taint the jury.

The trial court permitted defense counsel to make a proffer, and defense counsel explained that he wanted to question PK regarding his distrust of police officers. Specifically, counsel stated that he wanted to ask PK whether PK could treat the testimony of a police officer the same as any non-police officer if PK were directed to do so by the court.

¶ 12    The trial court acknowledged the right for counsel to question jurors but found that because PK indicated he could not trust police officers, questioning him further regarding the issue would taint the pool. The court then struck PK for cause.

¶ 13    Subsequently, the sheriff advised the court that PK was heard speaking on his phone about the case, saying he was on a jury about someone accused of drugs. The trial court ruled that the jury pool was tainted due to PK's behavior, and PK was excused.

¶ 14    Prior to commencement of trial on August 2, 2015, defense counsel objected to the use of Alexander's mug shot in which he is wearing a black hoodie. Defense argued the photograph was more inflammatory than probative because of Alexander's "posture, the look," and "I don't think the jury is going to like that picture." The State argued the photograph was relevant because Alexander was wearing a hoodie which would corroborate the State's argument that the drugs were recovered from Alexander's front hoodie pocket. The court overruled defense's objection.

¶ 15    At trial, Officer Bouch testified that he was working with Officer Hanranhan the night of May 4, 2014 and at around 7:40 pm, he observed Smith tender Alexander money and Alexander hand to Smith a small object from a plastic bag. Bouch believed he observed a narcotics transaction based on his 12 years of experience. Therefore, the officers stopped, exited the vehicle, and Bouch followed Smith who began walking up the stairs of the house.

4

Alexander remained on the sidewalk. Bouch observed Smith attempt to open a door with his right hand while at the same time dropping an object to the ground. Bouch recovered the dropped object immediately and found it to be a plastic Ziploc bag with black spade logos on it and suspect heroin. Bouch placed Smith in custody, brought him outside, and told Hanranhan that he recovered heroin. Bouch searched Smith but did not recover anything from his person. The officers took Alexander and Smith to the station. At the station, Hanranhan gave Bouch one plastic bag that had 32 smaller bags of suspect heroin and 13 smaller bags of suspect cocaine inside it, all with black spade logos.

¶ 16    On cross-examination, Bouch testified that the suspected narcotics were submitted for analysis but not for DNA testing or fingerprint analysis.

¶ 17    Next, Hanranhan testified on direct examination essentially the same as his testimony at the motion to quash hearing. However, on cross examination, the defense questioned Hanranhan regarding from where he recovered the drugs on Alexander. After Hanranhan testified that he recovered the drugs from Alexander's hoodie pocket, the defense introduced a transcript of Hanranhan's motion to quash testimony to refresh Hanranhan's memory. The following exchange took place.

Defense Counsel: Officer, at the hearing on November 10, 2014, . . . were you asked this question, and did you give this answer: Question: And did you subsequently recover items from the defendant's front coin pocket? Answer: Yes

Defense Counsel: Officer, were you asked that question and did you give that answer?

Hanranhan: I wasn't asked that question.

Defense Counsel: You were not asked the question, "And did you subsequently recover items from defendant's front coin pocket"?

Hanranhan: No, because that's not where I recovered it.

Defense Counsel: Officer, just to be clear. I am not asking where you are saying that you recovered the drugs from today. What I'm asking you is what question you were asked on November 10, 2014. Were you asked the question, "And did you subsequently recover items from the defendant's front coin pocket"?

Hanranhan: I wasn't asked that.

¶ 18    On redirect examination, Hanranhan testified that he was not asked if drugs were recovered from a coin pocket.  He noticed other mistakes in the transcripts such as the name of his partner being spelled "Vouch" and not "Bouch," and the transcripts indicated Hanranhan had been a police officer for 212 years. Hanranhan was also shown the mug shot of Alexander and identified the hoodie in the picture as the one Alexander was wearing when arrested. The State also pointed to a different part of the hearing transcript where Hanranhan testified that he recovered the drugs from Alexander's hoodie pocket.

¶ 19    Patricia Junius Hawkins, employed by the Illinois State Police Forensic Science Center testified as an expert witness in the field of forensic chemistry, Hawkins tested the drugs and found them positive for the presence of heroin and cocaine. The item recovered from Smith tested positive for 0.397 grams of heroin. The items recovered from Alexander tested positive for 3.375 grams of heroin and 1.123 grams cocaine.

¶ 20    The State rested, and defense moved for a directed finding which the court denied. The defense did not present any witnesses.

¶ 21　　The State then requested the court strike the questions and answers about recovering the drugs from the coin pocket because the defense could not perfect its impeachment of Hanranhan's testimony regarding where he recovered the drugs. The court agreed and said it would "admonish the jurors to disregard the testimony, questions asked, answers given by Officer Hanrahan about testimony from an earlier proceeding." The court then instructed the jury to disregard the testimony from Hanranhan about what took place during the motion to quash hearing because it was not evidence in the case.

¶ 22　　During closing argument, the defense argued the bags of drugs could have come from anywhere since there was no fingerprint or DNA evidence to show that the drugs were indeed recovered from Alexander.

¶ 23　　Thereafter, Alexander moved for a mistrial due to the court's admonishment of Hanranhan's testimony. Alexander explained that he chose not to accept a plea offer because he believed he would be able to impeach Hanranhan about where he recovered the drugs with Hanranhan's motion to quash hearing testimony. However, after Hanranhan testified at trial that he was never asked about the drugs being recovered from a coin pocket but rather from a hoodie pocket, defense counsel sought the court reporter as a rebuttal witness. Defense counsel interviewed the reporter and learned that the court reporter made a mistake in the official transcript. The court reporter's notes indicated Hanranhan testified to recovering the drugs from the front hoodie pocket. After learning this from the reporter, the defense decided to drop its line of argument. Accordingly, because this line of defense was taken away, they requested the court grant a mistrial.

¶ 24    The trial court denied Alexander's motion for mistrial and subsequently the jury found Alexander guilty on all counts.

¶ 25    On April 28, 2015, Alexander filed a Motion to Set Aside the Jury's Verdict of Guilty and Enter a Judgment of Not Guilty/Motion for New Trial. Alexander essentially made the same arguments regarding the mug shot being admissible, the mistake in the transcript from the motion to quash hearing, and the striking of juror PK. At a hearing on the motion, Alexander requested the court grant an extension to file a final motion for new trial because he had issued two subpoenas to the court reporter with which she had not complied. Alexander alleged that the first subpoena was for the reporter to testify at the hearing and the second was a subpoena duces tecum seeking all the reporter's documents including, "transcripts, stenograph notes, tape and audio recordings." Alexander told the court that the reporter was present but both she and her supervisor indicated they would not comply with the subpoena *duces tecum*. At that point, Alexander sought leave from the court to file a rule to show cause against the reporter. The trial court ruled that when Hanranhan testified at trial that the transcript was not correct, Alexander had the opportunity then to investigate and call the reporter as a witness during the course of trial but did not. Consequently, the court denied the rule to show cause.

¶ 26    The trial court did not quash the subpoena *duces tecum* but reissued it and made it returnable to the court for *in-camera* inspection of the requested documents.

¶ 27    On May 21, 2015, the trial court held a hearing on the subpoena *duces tecum*. The court stated that the court reporter complied with the subpoena by appearing in chambers with the reporter's notes. However, the court reporter did not bring the audio tape because it did not

exist. The court found the correction of the transcript was based on the audio that existed at the time but was no longer available.

¶ 28    On July 16, 2015, Alexander filed an amended Motion to Set Aside the Jury's Verdict of Guilty and Enter a Judgment of Not Guilty/Motion for New Trial. Alexander made the same arguments regarding PK and the mug shot. However, with regard to the error in the transcript, Alexander argued that because the only basis for the court reporter's correction of the transcripts of the hearing was an unavailable audio tape, there should be a new trial.  He argued that he was denied his "right to effective assistance of counsel, his right to confront witnesses against him and his due process right." The court found that there was an error in the transcript but based on the totality of the transcript, it found that Hanranhan said hoodie pocket and not coin pocket. The court also found nothing sinister in the audio tape not being available and denied the motion.

¶ 29    The court sentenced Alexander to eight years for possession with intent to deliver cocaine, eight years for possession with intent to deliver heroin, and six years for the delivery of a controlled substance, the heroin. The sentences were to run concurrently. The motion to reconsider the sentence was denied. Alexander appeals.

¶ 30                                    ANALYSIS

¶ 31    On appeal, Alexander argues the circuit court erred when it denied his motion for a mistrial, motion to set aside the jury's verdict, and motion for a new trial. Our supreme court has held that "a mistrial should be granted where an error of such gravity has occurred that the defendant has been denied fundamental fairness such that continuation of the proceedings would defeat the ends of justice." *People v. Nelson*, 235 Ill. 2d 386, 435 (2009). Denial of a mistrial will not

be disturbed on review absent a clear abuse of discretion. *Id*. Similarly, this court will not reverse the trial court's ruling on a motion for a new trial unless it is affirmatively shown that the trial court abused its discretion. *Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530, ¶ 38.

¶ 32 Alexander contends the trial court should have granted a mistrial because the court reporter improperly corrected the transcripts based on an unavailable audio tape. As a result, Alexander was denied his constitutional right to mount a defense, impeach a witness, and obtain a fair trial. In his brief on appeal, Alexander further contends the trial court erred when it struck Alexander's impeachment of Hanranhan based on Hanranhan's testimony at the motion to quash hearing, and the court prohibited the jury from drawing inferences relating to the credibility and reliability of Hanranhan. We review limitations on cross examination for an abuse of discretion. *People v. Robinson*, 368 Ill. App. 3d 963, 980 (2006). However, during oral arguments on appeal, Alexander's counsel acknowledged that the impeachment was not perfected and the trial court correctly struck the attempted impeachment.

¶ 33 A defendant has a fundamental right to cross-examine a witness. *Id*. Cross-examination of a witness "may concern any matter that goes to explain, modify, discredit, impeach or destroy the testimony of the witness." *Id* at 981. It is "the principal method by which the credibility of a witness is tested." *Davis v. Alaska,* 415 U.S. 308, 316 (1974). In *People v. Averhart*, 311 Ill. App. 3d 492 (1999), this court explained that evidence of misleading testimony by a key witness is not collateral and the defendant has the right to develop his theory of the case. *Id at 501* 311 Ill. App. 3d 492, 501 (1999). However, the *Averhart* court noted that

"the test is whether limitation on cross-examination created a substantial danger of

prejudice by denying defendant his right to test the truth of the testimony. [citation].

10

To determine the constitutional sufficiency of cross-examination, *a court looks not to what a defendant has been prohibited from doing, but to what he has been allowed to do*. [citation]. If the entire record shows that the jury has been made aware of adequate factors concerning relevant areas of impeachment of a witness, no constitutional question arises merely because defendant has been prohibited on cross-examination from pursuing other areas of inquiry" Emphasis added. *Id.* at 497.

¶ 34　　In this case, the defense's theory of the case was that the bags of drugs were not recovered from Alexander. As noted in *Averhart*, constitutional sufficiency of cross-examination is determined by what a defendant is allowed to do. To develop his theory that the drugs were not recovered from him, the court allowed Alexander to elicit testimony from Hanranhan and Bouch that the bags of drugs were never analyzed for fingerprints or DNA. The court further allowed Alexander, in closing argument, to argue that the drugs could have come from anywhere because there was no forensic evidence indicating the drugs were recovered from Alexander. The court only limited Alexander's cross examination of Hanranhan concerning whether the drugs were recovered from a hoodie pocket or a coin pocket. Based on the entire record, we find this limitation did not create a substantial danger of prejudice. The jury was made aware of adequate factors concerning the relevant areas of impeaching Hanranhan's testimony regarding the recovery of the drugs. It is inconsequential whether the drugs were recovered from his hoodie pocket or coin pocket because Alexander was allowed to develop his defense theory that the drugs were not recovered from him. The trial court admonished the jury to disregard the testimony, questions asked, and answers given by Officer Hanrahan

11

because the impeachment was not perfected. During oral arguments in this case counsel for Alexander acknowledged that impeachment was not perfected and that the trial judge properly struck the testimony. Therefore, we hold that the trial court did not abuse its discretion when it limited Alexander's cross examination.

¶ 35    Next, Alexander argues the court erred when it denied his objection to the use of his mug shot because the photograph was more inflammatory than probative, and there was no reason to show the photograph since he was present in court. The admission of evidence lies within the sound discretion of the trial court. *People v. Becker,* 239 Ill. 2d 215 (2010). Admission of a photograph into evidence must be based "on a consideration of the photograph's probative value as opposed to its prejudicial effect, and a determination of whether it portrays facts relevant to an issue, and can be verified as a correct representation of those facts." *People v. Gibson,* 205 Ill. App. 3d 361, 369 (1990).

¶ 36    In this case, the State argues the photograph was relevant because Alexander was wearing a hoodie in the photograph which would corroborate the State's argument that the drugs were recovered from Alexander's front hoodie pocket. The trial court found the photograph had more probative value than a prejudicial effect as it was taken the day Alexander was arrested and was not from a prior arrest. Accordingly, we find the trial court did not abuse its discretion in admitting the photo into evidence.

¶ 37    Alexander also argues the court erred when it did not permit defense counsel to question PK, outside the presence of other jurors, to determine whether PK could treat the testimony of a police officer the same as any non-police officer.

¶ 38    Illinois Supreme Court Rule 431 (rule 431) provides that "the court shall conduct *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate, touching upon their qualifications to serve as jurors in the case at trial." Ill. S. Ct. R. 431(a) (eff. July 1, 2012). Rule 431 further provides that "the court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate and shall permit the parties to supplement the examination by such direct inquiry as the court deems proper." *Id*. The determination of which questions are appropriate for *voir dire* rests in the sound discretion of the trial court. *People v. Strain*, 194 Ill. 2d 467, 476 (2000). An abuse of discretion occurs only when the trial court's ruling is "arbitrary, fanciful, or unreasonable" or where "no reasonable [person] would take the view adopted by the trial court." *People v. Illgen*, 145 Ill.2d 353, 364 (1991).

¶ 39    Prior to questioning PK individually, the trial court asked prospective jurors a series of questions including "do you understand that under the law the testimony of a police officer is not to be treated any differently than any other witness, that is, a police officer's testimony is entitled to the same consideration, no more no less, than any other witness who is not in law enforcement?" The court asked if anyone did not agree to raise a hand, but no one did. Furthermore, the court asked PK if he could put aside his distrust of the police and decide the case fairly to which he responded he could not because he "doesn't believe or trust police these days." We find it was not an abuse of discretion for the trial court to strike PK without permitting the defense to further question him after learning PK could not put aside his distrust of the police and decide the case fairly. *People v. Garstecki*, 234 Ill. 2d 430, 444 (2009) (holding that while the trial court is to exercise its discretion in favor of permitting direct

inquiry of jurors by attorneys, the court could also determine based on the nature of the charge, the complexity of the case, and the length of the court's examination, that no attorney questioning is necessary.).

¶ 40   Finally, Alexander was convicted and sentenced to eight years for Class 1 possession with intent to deliver heroin and six years for Class 2 delivery of a controlled substance, the heroin. During oral arguments on appeal, this court raised *sua sponte* the issue of whether these convictions violated the one-act, one-crime doctrine.   Both parties subsequently filed supplemental briefs on the issue. Alexander requested that this court vacate his Class 2 delivery of a controlled substance conviction.   The State argued that Alexander forfeited the argument having failed to raise it in the trial court, or in his original briefs on appeal, and only arguing the issue after this court raised it *sua sponte*.

¶ 41   Our supreme court has held that generally, a trial objection is necessary to preserve an issue for review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).   However, the supreme court also recognizes an exception to the rule, generally known as the plain error doctrine. *Gillespie v. Chrysler Motors Corp.*, 135 Ill. 2d 363, 375 (1990).   The plain error doctrine allows a reviewing court to consider a trial error not properly preserved when "(1) the evidence in a criminal case is closely balanced or (2) where the error is so fundamental and of such magnitude that the accused was denied a right to a fair trial." *People v. Harvey*, 211 Ill. 2d 368, 387 (2004). One-act, one-crime violations are recognized under the second prong of the plain error doctrine.  *Id.* at 389 (finding that an alleged one-act, one-crime violation and the potential for a surplus conviction affects the integrity of the judicial process).   Therefore, we will address Alexander's argument under the second prong of the plain error doctrine.  Whether

a one-act, one-crime violation has occurred is question of law, which we review *de novo*. *People v. Coats*, 2018 IL 121926, ¶ 12.

¶ 42     The one-act, one-crime doctrine states that a defendant may not be convicted of multiple offenses when those offenses are all based on "precisely the same physical act." *People v. King*, 66 Ill. 2d 551, 566 (1977). Determining whether a violation of the doctrine has occurred requires a two-step analysis. *People v. Rodriguez*, 169 Ill. 2d 183 (1986). First, the court ascertains whether the defendant's conduct consisted of a single physical act or separate acts. *Id.* at 186.  With a single act, multiple convictions are improper.  *Id.*  However, if the court determines that the defendant committed multiple acts, the court moves on to the second step and determines whether any of the offenses are lesser-included offenses.  *Id.*  If any of the offenses are lesser-included offenses, then multiple convictions are again improper.  *Id.*  If none of the offenses are lesser-included offenses, then multiple convictions may be entered. *Id.*

¶ 43     We must first determine whether Alexander's conduct consisted of separate physical acts or a single physical act.  The State argues that his possession and delivery were separate acts.

¶ 44     The definition of an "act" is "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566.  In determining whether conduct involved multiple acts or a single act, courts may also consider the time interval between successive parts of defendant's conduct, the existence of an intervening act, and whether the conduct occurred at the same location. *People v. Keefer*, 229 Ill. App. 3d 582, 584 (1992).

¶ 45     Alexander's conduct involved multiple acts.  His delivery conviction was based on the packet of heroin that he handed to Smith, and his possession conviction was based on the other

packets of heroin recovered from his hoodie pocket. We find that Alexander committed separate acts.

¶ 46     Even when there are separate acts, we must determine whether possession with the intent to deliver is a lesser-included offense of delivery of a controlled substance. In a one-act, one-crime analysis, courts apply the abstract elements approach to determine whether one offense is a lesser-included offense of another. *Coats*, 2018 IL 121926, ¶ 30. Under this approach, a comparison is made of the statutory elements of the two offenses and if "all of the elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second." *People v. Miller*, 238 Ill. 2d 161, 166 (2010).

¶ 47     We acknowledge that, generally, possession with the intent to deliver is a lesser-included offense of delivery, and for this reason, simultaneous convictions for possession of a quantity of a controlled substance with the intent to deliver and the actual delivery of that same quantity of controlled substance constitute double jeopardy and require that one conviction be vacated. *People v. Dale*, 137 Ill. App. 3d 101 (1985). However, here Alexander delivered less than one gram of heroin to Smith, and he was subsequently and separately found in possession of 3.375 grams of heroin. We find, under the circumstances presented in this case, the offense of possession of heroin (found on his person) with the intent to deliver is not a lesser-included offense of the delivery of heroin to Smith.

¶ 48                                         CONCLUSION

¶ 49     We hold the trial court did not abuse its discretion when it denied the motion for a mistrial, a new trial and to set aside the verdict. We also hold the trial court did not err in limiting

Alexander's cross-examination regarding whether the bags of drugs were recovered from his hoodie pocket or coin pocket since he was allowed to elicit testimony and argue the drugs were not recovered from him because the State failed to test the bags for DNA or fingerprints. Furthermore, the trial court did not abuse its discretion in admitting Alexander's mug shot into evidence because the photograph had more probative value than a prejudicial effect as it was relevant to the issue that the drugs were recovered from Alexander's hoodie pocket. Finally, the trial court did not abuse its discretion when it did not permit the defense to ask PK essentially the same question that had been asked of all prospective jurors. Alexander's convictions do not violate the one-act, one-crime doctrine.

¶ 50          Affirmed.