2020 IL App (1st) 180620-U

No. 1-18-0620

Order filed November 12, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 2806 |
| | ) | |
| RICHARD HIGHTOWER, | ) | Honorable |
| | ) | Mary M. Brosnahan and |
| Defendant-Appellant. | ) | Ursula Walowski, |
| | ) | Judges, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Hall concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm defendant's convictions where the State proved him guilty of aggravated fleeing or attempting to elude a peace officer beyond a reasonable doubt and the trial court did not err in granting the State's motion *in limine* to prevent the defense from cross-examining police witnesses about other officers' memoranda on firearm and arrest quotas.

¶ 2    Following a jury trial, defendant Richard Hightower was found guilty of two counts of

unlawful use of a weapon by a felon (UUWF) and one count of aggravated fleeing or attempting

to elude a peace officer. The court sentenced defendant to concurrent terms of eight years' imprisonment on each count of UUWF, and three years' imprisonment on aggravated fleeing or attempting to elude a peace officer. On appeal, defendant argues that the evidence was insufficient to prove he disobeyed two or more official traffic control devices for purposes of aggravated fleeing or attempting to elude a peace officer, and that his right to confront witnesses was violated where the trial court granted the State's motion *in limine* to prohibit the defense from cross-examining police witnesses about other officers' memoranda regarding firearm "quotas" and "competitions." For the following reasons, we affirm.[1]

¶ 3    Defendant was indicted on four counts of UUWF, two counts of aggravated unlawful use of a weapon, and two counts of aggravated fleeing or attempting to elude a peace officer.

¶ 4    Prior to trial, the State filed a motion *in limine* to preclude defendant from "entering into evidence any reference to an incident" described in two Cook County Sheriff's Department memoranda dated October 18, 2015. According to the motion, Investigator Eduardo Hower wrote a memorandum about an incident that he and Investigator Ruiz had with Sergeant Joseph Scofield on October 18, 2015.[2] Hower's memorandum, which defense counsel tendered to the State and the court, stated that Scofield informed Hower, a member of the "North Gang Team," that Hower was in a "felony and gun unit only" and that is what Hower was "required to bring in." Scofield also questioned Hower's activity level, and according to Hower's memorandum, "it appeared [Scofield] was demanding we solicit weapons from citizens on all stops in lieu of arrest." Hower

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2] Ruiz's first name is not in the record.

also wrote that the supervisors of the Street Crime Suppression Unit "appear to have entered into a competition amongst themselves."

¶ 5 In the other memorandum, which defense counsel also tendered, Ruiz, another member of the "North Gang Team," wrote that Scofield stated that if she did not produce felony arrests or firearms, he would continue to have conversations with her. Scofield also suggested that the entire unit attend a "refresher's course" on the meaning of probable cause and reasonable suspicion. Ruiz wrote that "Scofield seem[ed] to be in competition for gun recoveries with the South and Central teams *** where he is placing the North team in a compromising position."

¶ 6 At a hearing on October 24, 2017, defense counsel acknowledged that Hower and Ruiz were not witnesses in the case but stated that Scofield supervised defendant's arrest.[3] Counsel stated he would introduce the memoranda as evidence of a competition between the different crime suppression units of the Cook County Sheriff's Police Department. Counsel stated that this evidence would evince bias, show the officers were operating with the knowledge that if "they did not cause a gun arrest ***, they could be subject to disciplinary action," and explain why they "might feel compelled to charge [defendant] with a gun that was never seen on his person." The State responded that the investigation that resulted in defendant's arrest was under the "central crimes suppression unit," not under Scofield, and the investigators involved in the arrest had a different sergeant then Scofield.

¶ 7 The court ruled that the information in the memoranda was irrelevant, as neither Ruiz nor Hower were involved in the case. Moreover, their memoranda speculated about a competition between the different units, but "according to their very own memos," Scofield "was just talking

---

[3] The Honorable Mary M. Brosnahan presided at the hearing on the State's motion *in limine*.

to them about their job[s]," and how they were "working on a gun and drug team and they didn't have any arrests." Furthermore, the court found the memoranda to be hearsay.

¶ 8    Defense counsel asked if she could question testifying witnesses about firearm or arrest quotas. The court stated it would not permit questioning regarding the memoranda because defendant was currently unable "to prove it up," so those questions would just raise a "specter" of a "crazy competition" between "rogue sheriff's officers." The court found the memoranda to be the investigators' opinion of Scofield, and not proof of a competition.

¶ 9    Prior to the start of defendant's jury trial, the court reviewed the transcript of the hearing on the State's motion *in limine* and stated that unless Scofield was called as a witness the court would stand by the ruling.[4] The court held that the memoranda were irrelevant where defendant did not show that the officers in this case felt pressure from Scofield to "make an arrest without proper investigation."

¶ 10    The State proceeded on two counts of UUWF predicated on possession of a firearm and ammunition (720 ILCS 5/24-1.1(a) (West 2016)) and one count of aggravated fleeing or attempting to elude a peace officer predicated on disobeying at least two official traffic control devices (625 ILCS 5/11-204.1(a)(4) (West 2016)).

¶ 11    Jeff Pasqua, a special agent for the Drug Enforcement Administration and former investigator for the Cook County Sheriff's Police Department, testified that he was working with Investigators Michael Ware and Arthur Taylor at approximately 9 p.m. on February 5, 2016, in Chicago. The investigators were in an unmarked vehicle with no exterior identification, but the

---

[4] The Honorable Ursula Walowski presided at trial.

interior lights were red and blue. They wore tan patrol uniforms with name tags and visible stars showing they were members of the Cook County Sheriff's Police Department.

¶ 12     On Marquette Road, near Normal Avenue, the officers observed a maroon minivan with its "rear registration light" out. Ware, who was driving, initiated a traffic stop by turning his "blue lights" on. The minivan pulled over, and Pasqua and Taylor exited the police vehicle. The State published a photograph of the intersection and traffic light at Marquette and Normal where the stop began. Pasqua went to the driver's side of the minivan, and identified defendant in court as the driver. Taylor approached the passenger side, where another person was situated. Pasqua requested defendant's driver's license and proof of insurance, which defendant produced. Ware took the documents so he could "run the identification of the subject."

¶ 13     Pasqua observed the strong scent of burnt cannabis, and asked defendant and his passenger if any had been smoked. They indicated no one had been smoking. Pasqua asked them to exit the vehicle, but defendant put the minivan in drive and "pressed on the accelerator really hard," fleeing eastbound on Marquette. Pasqua had to push off defendant's minivan to avoid injury. He ran back to his vehicle and reported by radio that the minivan had fled. Because the sheriff's department policy was not to chase vehicles, the investigators followed approximately a block and a half to two blocks behind defendant with their oscillating lights on.

¶ 14     Defendant went through a red traffic light on Marquette and Stewart Avenue, and again on Marquette and Wentworth Avenue. Pasqua and the other investigators lost sight of defendant's vehicle, but continued eastbound until they saw it abandoned on the corner of Marquette and Lafayette Avenue. Using a map published by the State, which is included in the record on appeal, Pasqua showed the jury the route defendant traveled. Pasqua described the route as "eastbound

going through Stewart, [and] Wentworth," where there were "two traffic lights that were red, and the vehicle just went right through them." Pasqua searched the area with Taylor to see if he could locate defendant or the passenger.

¶ 15    Assisting units arrived, and defendant was found and arrested by Scofield and Sergeant Lewis Domanech on the 6700 block of South Lafayette. Pasqua returned to search the minivan, and Ware located a firearm after searching the driver's side. Another officer took defendant to the police station, where Pasqua and Ware advised him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant signed a form acknowledging his rights and stated that "[y]ou got me. You already have the gun. So why do I need to make a statement." No one in Pasqua's presence told defendant that a firearm was recovered.

¶ 16    On cross-examination, Pasqua testified defendant did not commit any other traffic violations prior to the stop. He did not see cannabis in the minivan, and the occupants of the minivan provided "no real actual response" when Pasqua asked if they had smoked cannabis. Pasqua also did not see any firearms in the minivan or on defendant's person and he was not aware of any photographs taken of the firearm underneath the seat in its original location. Pasqua saw the firearm when Ware showed it to him.

¶ 17    Ware testified that after curbing the minivan, he called in the traffic stop and walked to the driver's side behind Pasqua. Ware identified defendant in court as the driver. Ware received defendant's driver's license and "information" on the passenger, which he "ran" on his computer. Defendant then fled and drove through multiple red traffic lights. Ware pursued defendant and activated his lights and sirens during the chase. After finding the abandoned minivan, Ware stayed with it and waited approximately two minutes for Pasqua to return. Ware and Pasqua then searched

the minivan, and Ware located a firearm with a long magazine underneath the driver's seat. There was a round in the chamber of the firearm, and 16 or 17 rounds in the magazine.

¶ 18    On cross-examination, Ware testified he was in the central unit of the Street Crime Suppression Unit, and Scofield helped find defendant but did not otherwise participate in the investigation. Possibly 20 law enforcement officers were on the scene, including Scofield's north unit of the Street Crime Suppression Unit, but Ware was under the supervision of Domanech. Ware did not see the firearm or magazine in plain view, but found them once he looked beneath the driver's seat. Defense counsel asked Ware whether he was "looking for vehicles to pull over" on the night of defendant's arrest. Ware responded, "kind of," and agreed that he was not looking to arrest any particular suspects.

¶ 19    Forensic scientist Barry Adams testified that he examined the firearm, 17 cartridges, and the magazine, but did not observe any fingerprints suitable for comparison. Adams stated it was possible for people to handle an item and not leave fingerprints because they were wearing gloves or had just washed their hands.

¶ 20    The State entered a stipulation that defendant had a qualifying felony conviction under case number 12 CR 448.

¶ 21    In closing, defense counsel argued that no one saw a firearm during the traffic stop, defendant's fingerprints were not found on the firearm, and no pictures showed the firearm's location in the vehicle. Furthermore, counsel questioned why the officers made the traffic stop, emphasizing that they were members of the Crime Suppression Unit and "Ware admitted they [were] actually out looking for arrests."

¶ 22    The jury found defendant guilty of both counts of UUWF, and aggravated fleeing or attempting to elude a peace officer. Defendant filed a motion for a new trial that he supplemented to argue, in part, that he should have been permitted to elicit testimony about the memoranda.  The trial court denied the motion. Following a hearing, the court sentenced defendant to concurrent terms of eight years' imprisonment on both counts of UUWF and three years' imprisonment on aggravated fleeing or attempting to elude a peace officer. Defendant filed a motion to reconsider sentence, which was denied.

¶ 23    On appeal, defendant first argues that his conviction for aggravated fleeing or attempting to elude a peace officer should be reduced to misdemeanor fleeing and eluding because the State did not prove beyond a reasonable doubt that the red traffic lights defendant disobeyed were "official traffic control devices."

¶ 24    Where a defendant challenges the sufficiency of the evidence presented against him, the appellate court asks whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). Under this standard, we draw "all reasonable inferences from the record in favor of the prosecution." *People v. Davison*, 233 Ill. 2d 30, 43 (2009). The trier of fact is responsible for determining the witnesses' credibility, weighing their testimony, resolving conflicts in the evidence, and drawing all reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). We will not substitute our judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses. *Brown*, 2013 IL 114196, ¶ 48. A reviewing court " 'will not reverse a conviction unless the evidence is so improbable,

unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.' " *People v. Lloyd*, 2013 IL 113510, ¶ 42 (quoting *People v. Collins*, 214 Ill. 2d 206, 217 (2005)).

¶ 25    A defendant commits the offense of fleeing or attempting to elude a peace officer when "having been given a visual or audible signal by a peace officer directing [the defendant] to bring his vehicle to a stop," the defendant "willfully fails or refuses to obey such direction, increases his speed, extinguishes his lights, or otherwise flees or attempts to elude the officer." 625 ILCS 5/11-204 (West 2016). Relevant here, the offense is aggravated when the flight or attempt to elude "involves disobedience of 2 or more official traffic control devices." 625 ILCS 5/11-204.1(a)(4) (West 2016). Official traffic control devices include "[a]ll signs, signals, markings, and devices which conform with the State Manual and not inconsistent with [the Illinois Vehicle Code] placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic." 625 ILCS 5/1-154 (West 2016).

¶ 26    Defendant does not contest that he attempted to elude the police officers or that he disobeyed two red traffic lights; rather, he contends that the State failed to prove, as an element of the aggravated offense, that the traffic lights were "erected by public authority for the purpose of regulating, guiding, or warning traffic."

¶ 27    After viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, we find a rational trier of fact could have found the State proved defendant disobeyed two or more official traffic control devices. First, we note section 11-305(d) of the Illinois Vehicle Code, which deals with traffic control devices, states as follows:

"Whenever any official traffic-control device is placed or held in position approximately conforming to the requirements of [the Illinois Vehicle Code] and purports to conform to

the lawful requirements pertaining to such device, such device shall be presumed to have been so placed or held by the official act or direction of lawful authority, and comply with the requirements of [the Illinois Vehicle Code], unless the contrary shall be established by competent evidence." 625 ILCS 5/11-305(d) (West 2016).

¶ 28    Here, Pasqua testified that defendant went through red traffic lights at Marquette's intersections with Stewart and Wentworth. Additionally, he identified a map of defendant's route and noted where there were "two traffic lights that were red" and how defendant's vehicle "just went right through them." The State also presented a photograph of the traffic light at Marquette and Normal, which is included in the record on appeal and appears to be an ordinary device for controlling traffic and not irregularly positioned. Pasqua referred to this "traffic light" using the same language as the "two traffic lights" at Stewart and Wentworth, and all three intersections are on the map. In light of this evidence and the statutory presumption contained in section 11-305(d) of the Illinois Vehicle Code, the trier of fact could reasonably determine the red traffic lights that defendant disobeyed were "official traffic control devices" as defined in the Illinois Vehicle Code. See *id.* Accordingly, we are unable say that the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.

¶ 29    Defendant relies on *People v. Murdock*, 321 Ill. App. 3d 175 (2001) and *People v. Lipscomb*, 2013 IL App (1st) 120530, for the proposition that "specific proof of every part of every element" is required to convict someone of aggravated fleeing or eluding, but both cases are distinguishable. In *Murdock*, the defendant was found guilty of aggravated fleeing or attempting to elude a police officer, and evidence was presented that the officer activated overhead emergency lights and a siren. *Murdock*, 321 Ill. App. 3d at 176-77. However, there was no evidence of the

officer being in uniform, an element of the crime, and the conviction was reversed. *Id.* In *Lipscomb*, the defendant was convicted of aggravated fleeing or attempting to elude a police officer because he traveled at least 21 miles per hour over the legal speed limit. *Lipscomb*, 2013 IL App (1st) 120530, ¶ 1. The officer testified that during his pursuit of the defendant he saw his speedometer read 55 miles per hour and the residential area had a speed limit of 15 to 20 miles per hour. *Id.* ¶ 2. There was no evidence of the defendant's rate of speed, an element of the offense, and the conviction was vacated. *Id.* ¶¶ 9, 13. Here, there is evidence that defendant disobeyed two or more traffic devices through the officers' testimony that defendant ran "red lights" and "traffic lights that were red" at two intersections as identified on a map of the location. Therefore, defendant's conviction for aggravated fleeing or attempting to elude a peace officer is affirmed.

¶ 30 Defendant next argues the trial court erred by granting the State's motion *in limine* prohibiting the defense from cross-examining the officers about firearm "quotas" and "competitions." Defendant contends this violated his right to confront and cross-examine the witnesses on their biases and motives to testify falsely.

¶ 31 A criminal defendant is guaranteed the opportunity to confront the witnesses against him under the United States and Illinois constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Nutall*, 312 Ill. App. 3d 620, 626 (2000). "A defendant has the right to cross-examine a witness concerning bias, interest or motive to testify falsely." *People v. Kliner*, 185 Ill. 2d 81, 134 (1998). Yet, the confrontation clause does not stop the trial court from limiting defense counsel's questioning of potential bias of a witness. *Id.* The trial court "retains wide latitude to impose reasonable limits on such cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or of little

relevance." *Id.* The evidence used to show a witness's "bias, interest or motive should be timely, unequivocal and directly related," and "must not be 'remote or uncertain.' " *People v. Sims*, 192 Ill. 2d 592, 625 (2000) (quoting *People v. Triplett*, 108 Ill. 2d 463, 476 (1985)).

¶ 32    Ultimately, the confrontation clause guarantees that a defendant has the opportunity for effective cross-examination, not that a defendant may cross-examine to whatever extent and in whatever way he wants. *People v. Harris*, 123 Ill. 2d 113, 144-45 (1988) (citing *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). When the record demonstrates that the jury has been notified of "relevant areas of impeachment of a witness, no constitutional question arises merely because the defendant has been prohibited on cross-examination from pursuing other areas of inquiry." *People v. Averhart*, 311 Ill. App. 3d 492, 497 (1999).

¶ 33    Where the constitutional right to confrontation is satisfied, the trial court may exercise its discretion and limit the scope of cross-examination. *People v. Harmon*, 2015 IL App (1st) 122345, ¶¶ 99-100. We will reverse a trial court's limitation on the scope of cross-examination where there has been a clear abuse of discretion that results in manifest prejudice to the defendant. *People v. Jackson*, 2017 IL App (1st) 151779, ¶ 22. When no reasonable person would take the view adopted by the trial court, an abuse of discretion occurs. *Peach v. McGovern*, 2019 IL 123156, ¶ 25.

¶ 34    Here, the trial court granted the State's motion *in limine* to prevent defendant from questioning the officers about firearm or arrest quotas. Defendant only presented evidence at the pretrial hearing on the State's motion *in limine* of two memoranda written by Hower and Ruiz of the north unit, speculating about statements by Scofield that they construed as referring to an arrest quota and competition between units. According to the memoranda, Scofield questioned Hower about his activity level, and complained he did not get any arrests the day prior to the meeting.

Scofield told Ruiz that they would continue to have conversations if there were no arrests. Scofield was at the scene of defendant's arrest but not involved in the investigation.

¶ 35     We find that defendant's constitutional right to confront the witnesses was not violated, as there was no relevant, non-speculative evidence that Ware or Pasqua, who investigated defendant and testified at trial, were motivated by a firearm or arrest quota. The content of the memoranda was neither unequivocal nor directly related to Ware's or Pasqua's actions. Ware and Pasqua were not supervised by Scofield or in his unit, and Hower's and Ruiz's memoranda merely speculated about quotas. Therefore, the evidence in the memoranda that defendant sought to use in Ware's and Pasqua's impeachment was remote and uncertain. See *Sims*, 192 Ill. 2d at 625 (Evidence used to show a witness's "bias, interest or motive should be timely, unequivocal and directly related.").

¶ 36     Furthermore, defendant was not prevented from presenting the theory that he did not control the firearm recovered from the minivan where he questioned the witnesses on when and where they first saw the firearm and whether photographs were taken of the firearm underneath the seat, and also elicited testimony from Adams about the lack of fingerprints on the recovered firearm, magazine, and cartridges. In closing argument, defense counsel emphasized this lack of evidence and argued that defendant did not possess a firearm, and further argued that the officers were "looking for arrests." Consequently, the court granting the State's motion *in limine* did not violate defendant's constitutional rights. See *Averhart*, 311 Ill. App. 3d at 497 (where the record demonstrates that the jury has been notified of "relevant areas of impeachment of a witness, no constitutional question arises merely because the defendant has been prohibited on cross-examination from pursuing other areas of inquiry").

¶ 37    Given the wide latitude of the trial court to impose reasonable limits on cross-examination, its decision in this case was not an abuse of discretion. A reasonable person could take the view adopted by the court that the evidence of firearm and arrest quotas was speculative and not relevant to Ware's or Pasqua's testimony.

¶ 38    Notwithstanding, defendant relies on *Averhart* for the proposition that there may be a violation of confrontation rights even where the jury is permitted to hear some evidence of an officer's bias. In *Averhart*, the trial court limited the cross-examination of the arresting officer regarding a previous encounter with the defendant, which resulted in the defendant filing a complaint alleging physical abuse and false arrest. *Averhart*, 311 Ill. App. 3d at 494. The court allowed the defense to elicit the fact that the defendant had filed a prior complaint raising "serious charges" against the officer, but in response, the State could introduce evidence that the charge was not sustained. *Id.* at 494-95. On appeal, the defendant argued that the court abused its discretion when it restricted his cross-examination of the arresting officer about physical abuse during the previous encounter. *Id.* at 496. This court found evidence involving the complaint was relevant because the nature of the "relationship between the defendant and [the arresting officer] was critical," and that barring all "substantive inquiry" about the complaint violated the defendant's confrontation rights. *Id.* at 498-99. Here, in contrast, the information in the memoranda on alleged firearm and arrest quotas was not relevant evidence to impeach the testifying witnesses where the evidence was speculative and did not involve the witnesses' relationship with defendant. Therefore, it was appropriate to limit cross-examination because the evidence was not relevant, and no abuse of discretion occurred.

¶ 39    For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 40    Affirmed.